IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PEGGY ROIF ROTSTAIN, GUTHRIE ABBOTT, CATHERINE BURNELL, STEVEN QUEYROUZE, JAIME ALEXIS ARROYO BORNSTEIN, and JUAN C. OLANO, on behalf of themselves and all others similarly situated, | § § § § § § § § | |
| *Plaintiffs,* | § § | Civil Action No. _____ |
| v. | § § | JURY TRIAL DEMANDED |
| TRUSTMARK NATIONAL BANK, HSBC BANK PLC, THE TORONTO-DOMINION BANK, SG PRIVATE BANKING (SUISSE) S.A., and BANK OF HOUSTON, | § § § § § § § | |
| *Defendants.* | § | |

**NOTICE OF REMOVAL**

Defendants Trustmark National Bank ("Trustmark"), The Toronto-Dominion Bank ("TD Bank"), and Bank of Houston ("BoH") (collectively, the "Removing Defendants") hereby jointly notify this Court that they are removing the above-captioned civil action, currently pending in the 129th Judicial District Court of Harris County, Texas, to the United States District Court for the Southern District of Texas, Houston Division. The Removing Defendants invoke four independent grounds for removal: (1) the Class Action Fairness Act of 2005 ("CAFA"), Pub L. No. 109-2, 119 Stat. 4 (2005); (2) the Edge Act, 12 U.S.C. § 611 *et seq.*; (3) the existence of an Amended Receivership Order dated March 12, 2009, in which a federal district court for the Northern District of Texas has assumed exclusive jurisdiction over certain of the claims and causes of action asserted herein; and (4) federal question jurisdiction, 28 U.S.C. §1441(a)-(b).

## PLEADINGS AND PROCEEDINGS

1. On August 23, 2009, Plaintiffs filed a four-count putative class action petition against five banks: Trustmark, TD Bank, BoH, HSBC Bank PLC ("HSBC"), and SG Private Banking (Suisse) S.A. ("SGPB Suisse") (collectively, "Defendant Banks"). On October 9, 2009, Plaintiffs filed a First Amended Petition (hereafter, "Amended Petition"). The state court case is styled *Rotstain, et al. v. Trustmark National Bank, et al.*, Cause No. 2009-53845 ("State Court Action").

2. In compliance with 28 U.S.C. § 1446(a) and Local Rule 81, a copy of all process, pleadings, and orders served in the State Court Action, along with the docket sheet, an index of matters being filed, and a list of counsel, including addresses, telephone numbers and parties represented, are attached hereto as Exhibit A.

3. Defendants BoH and TD Bank were the first of the Defendant Banks to be served in this action. BoH and TD Bank were both served with a Summons and the Amended Petition through their registered agents for service of process on November 4, 2009. Trustmark's registered agent for service of process was served with a Summons and the Amended Petition on November 5, 2009. This Notice of Removal is filed within thirty days of the simultaneous service of the Summons and Amended Petition as required by 28 U.S.C. § 1446(b). However, the Removing Defendants note that defendants are not bound by the thirty day time period set forth in 28 U.S.C. § 1446(b) when removing under the Edge Act. *See Hill v. Citicorp*, 804 F. Supp. 514, 516 (S.D.N.Y. 1992). Rather, defendants may remove any time before trial. *See* 12 U.S.C. § 632; *Hill*, 804 F. Supp. at 516.

4. None of the other Defendant Banks have been served with a Summons and the Amended Petition. Therefore, their consent to removal is not required. *See Getty Oil Corp. v.*

*Ins. Co. of N. Am.*, 841 F.2d 1254, 1263 (5th Cir. 1988) (stating that all *served* defendants must join in the petition). In any event, consent to removal is unnecessary under CAFA, 28 U.S.C. § 1453(b).

## NATURE OF ACTION

5.  The Amended Petition purports to state claims on behalf of persons allegedly defrauded by Antiguan-based Stanford International Bank, Ltd. ("SIBL"), part of the Stanford Financial Group controlled by R. Allen Stanford (collectively, "Stanford"), against correspondent banks that collected and transferred funds for SIBL. According to the Amended Petition, Stanford perpetrated "a massive fraud in which Stanford misappropriated billions of dollars, falsified SIBL's financial statements, and concealed their fraudulent conduct from customers, prospective customers, and regulators in the United States and elsewhere." Am. Pet. ¶ 31. Plaintiffs have not named SIBL, SFG, R. Allen Stanford, or any other Stanford entity as a defendant in this action; rather, Plaintiffs filed suit against the five Defendant Banks with which SIBL may have maintained accounts.

6.  Plaintiffs define the putative class to include "all individuals who, and entities that, as of February 16, 2009, were customers of SIBL, with monies on deposit at SIBL and/or holding CDs issued by SIBL." Am. Pet. ¶ 23.

7.  Counts One, Two, and Three purport to state claims under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com. § 24.001, *et seq.*, seeking to avoid "fees and other monies" allegedly collected by the Defendant Banks for providing banking services to Stanford and SFG. Am. Pet. ¶¶ 80-97.

8. Count Four purports to state a claim against the Defendant Banks for allegedly conspiring and/or aiding and abetting the alleged fraud of Stanford on the theory that the Defendant Banks knew or should have known of the alleged fraud. Am. Pet. ¶¶ 98-148.

9. Plaintiffs seek (1) certification of the class, (2) an order avoiding the alleged fraudulent transfers, (3) an award of compensatory damages alleged to be in excess of $7 billion for the class, and (4) an award of attorneys' fees and costs. Am. Pet. at 38 ("Request for Relief").

## VENUE

10. The Southern District of Texas, Houston Division, embraces Harris County, the place where the State Court Action is pending. Consequently, for purposes of this notice of removal, venue is proper in this district and division under 28 U.S.C. § 1441(a).

## JURISDICTION

11. This case is removable for the following independent reasons:

**A.  JURISDICTION UNDER CAFA**

12. This Court has diversity jurisdiction under CAFA, 28 U.S.C. §§ 1332(d), 1441, and 1453, and all other applicable bases for removal within CAFA. "Under CAFA, subject to certain exceptions and exclusions, a defendant may remove a class action to federal court if: (1) minimal diversity exists; (2) the aggregate amount in controversy exceeds $5,000,000; and (3) the proposed class includes more than 100 people." 28 U.S.C. §§ 1332(d) & 1453; *see also Werner v. KPMG LLP*, 415 F. Supp. 2d 688, 694 (S.D. Tex. 2006). All of these requirements are met in the present case.

13. This action is a "class action" because Plaintiffs bring this action under a "rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B); *see also* Am. Pet. ¶¶ 23-30.

**1.      Minimal Diversity**

14. Generally, "minimal diversity" means "the existence of at least *one* party who is diverse in citizenship from one party on the other side of the case." *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 577 n.6 (2004) (emphasis in original). CAFA specifies that minimal diversity exists where "(A) any member of a class of plaintiffs is a citizen of a State different from any defendant; (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state." 28 U.S.C. § 1332(d)(2).

15. For individuals, "the state where someone establishes his domicile serves a dual function as his state of citizenship." *Preston v. Tenet Healthsystem Memorial Medical Ctr., Inc.*, 485 F.3d 793, 797 (5th Cir. 2007). A "citizen or subject of a foreign state" refers "to those aliens or foreigners who are citizens or subjects of some specific foreign state." *Blair Holdings Corp. v. Rubinstein*, 133 F. Supp. 496, 500 (S.D.N.Y. 1955). "For purposes of diversity jurisdiction, only the American nationality of a dual national is recognized." *Coury v. Prot*, 85 F.3d 244, 247 (5th Cir. 1996).

16. "[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). "A corporation incorporated in a foreign country is a citizen of that country for

5

purposes of diversity jurisdiction." *Panalpina Welttransport GmBh v. Geosource, Inc.*, 764 F.2d 352, 354 (5th Cir. 1985).

17.     As pleaded by Plaintiffs, Plaintiff Peggy Rotstain is a citizen of Peru residing in Peru; Plaintiff Catherine Burnell is a citizen of the United Kingdom residing in Antigua; Plaintiff Steven Queyrouze is a citizen of Louisiana residing in Louisiana; Plaintiff Jaime Alexis Arroyo Bornstein is a citizen of Mexico residing in Mexico; and Plaintiff Juan C. Olano is a citizen of Florida residing in Florida. *See* Am. Pet. ¶¶ 6-11.  Upon information and belief, Plaintiff Guthrie Abbott is a citizen of Mississippi residing in Mississippi.  With respect to the class generally, the Plaintiffs allege that the "fraud was based upon the collection of billions of dollars from unsuspecting victims in the United States, Canada, Mexico, Colombia, Peru, Venezuela, and elsewhere in the world." Am. Pet. at 2 ("Preliminary Statement").  Thus, Plaintiffs allege that the named class members are citizens or subjects of various States and foreign states.

18.     As pleaded by Plaintiffs, Defendant TD Bank is a banking corporation incorporated in Canada, with its principal place of business in Canada; Defendant HSBC is an international bank with its registered office and principal place of business in London, England; Defendant SGPB Suisse is a banking corporation organized under the laws of France with its principal place of business in France[1]; Defendant Trustmark is organized under the laws of the United States with its principal place of business in the State of Mississippi; and Defendant BoH is a banking institution with its principal place of business in Houston, Texas. *See* Am. Pet. ¶¶ 13-17.

19.     Accordingly, on the foregoing facts as alleged in Plaintiffs' Amended Petition, the requisite minimal diversity of citizenship exists between Plaintiffs and the Defendant Banks

---

[1] Although it has no bearing on the bases for removal set forth in this motion, Plaintiffs incorrectly allege that SGPB Suisse is organized under the laws of France with its principal place of business in France, when, in fact, it is organized under the laws of Switzerland and has its principal place of business there.

6

under 28 U.S.C. § 1332(d)(2)(A), (B), and (C) both at the time that Plaintiffs' First Amended Petition was filed and at the time of removal.[2]

### 2. Amount In Controversy

20. Under CAFA, a minimally diverse class action is removable if the amount in controversy is greater than $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2). The claims of the individual class members "shall be aggregated" to determine whether the jurisdictional minimum has been met. 28 U.S.C. § 1332(d)(6); *see also Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 324 (5th Cir. 2008); *Rasberry v. Capitol County Mut. Fire. Ins. Co.*, 609 F. Supp. 2d 594, 600-01 (E.D. Tex. 2009).

21. "Unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938); *see also De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).

22. While the Removing Banks deny that Plaintiffs are entitled to any recovery, Plaintiffs allege that the aggregate damages to the class are "in excess of $7 billion," well in excess of the $5 million threshold under CAFA. Am. Pet. ¶ 147. It is apparent from the face of the Amended Petition that the amount-in-controversy requirement is satisfied in this case.

### 3. The Proposed Class Exceeds 100 Members

23. The proposed class includes "all individuals who, and entities that, as of February 16, 2009, were customers of SIBL, with monies on deposit at SIBL and/or holding CDs issued

---

[2] For example, because Plaintiffs Queyrouze and Olano are citizens of States (LA and FL) different from Defendants Trustmark and BoH (MS and TX), minimal diversity is present under § 1332(d)(2)(A). Likewise, because Plaintiffs Rotstain, Burnell, and Bornstein are citizens of foreign states (Peru, U.K., Antigua, and Mexico) and Defendants Trustmark and BoH are citizens of States (MS and TX), minimal diversity is present under § 1332(d)(2)(B). Finally, because Plaintiffs Queyrouze, Olano, and Abbot are citizens of States (LA, FL, and MS) and Defendants TD Bank, HSBC, and SGPB Suisse are citizens of foreign states (Canada, U.K., and, in the case of SGPB Suisse, allegedly France, actually Switzerland), minimal diversity is present under § 1332(d)(2)(C).

by SIBL." Am. Pet. ¶ 23. Plaintiffs allege upon information and belief that the "[c]lass members number in the tens of thousands," Am. Pet. ¶ 24, well in excess of the 100 class members needed to satisfy CAFA jurisdictional requirements. For these reasons, removal is proper under CAFA, 28 U.S.C. §§ 1332(d), 1441, and 1453.

B. **JURISDICTION UNDER THE EDGE ACT**

24. This Court also has federal question jurisdiction under the Edge Act, which states in pertinent part:

> Notwithstanding any other provision of law, all suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking . . . or out of other international or foreign financial operations . . . shall be deemed to arise under the laws of the United States.

12 U.S.C. § 632. Thus, the jurisdictional requirements under the Edge Act are: "(1) a corporation organized under the laws of the United States must be a party to the action and (2) the action must arise out of transactions involving international or foreign banking or other international or foreign financial operations." *Highland Crusader Offshore Partners, L.P. v. LifeCare Holdings, Inc.*, 627 F. Supp. 2d 730, 732 (N.D. Tex. 2008) (citing *Bank of America Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 213 (S.D.N.Y. 2005)).

25. According to the Amended Petition, Trustmark "is a national bank association chartered by the Office of the Comptroller of the Currency pursuant to the applicable laws of the United States of America and the related rules promulgated by the Office of the Comptroller of the Currency." Am. Pet. ¶ 16. BoH is also a corporation organized under the laws of the United States. Therefore, this case undoubtedly includes a corporate party organized under the laws of the United States, thereby satisfying the first requirement for jurisdiction under the Edge Act.

8

26. In determining whether the second jurisdictional requirement under the Edge Act is satisfied, the Court must consider "whether the lawsuit arises out of transactions that are (a) foreign and (b) either banking transactions or financial operations." *Highland Crusader*, 627 F. Supp. 2d at 732. "A suit satisfies the jurisdictional requisites of Section 632 if any part of it arises out of transactions involving international or foreign banking." *In re Lloyd's American Trust Fund Litigation*, 928 F. Supp. 333, 338 (S.D.N.Y. 1996). In particular, "Section 632 confers jurisdiction on the district courts over suits arising out of national banks engaging in banking activities with foreign companies." *First National Bank of Joliet v. Promatek Medical Systems*, Inc., 870 F. Supp. 234, 237 (N.D. Ill. 1994).

27. Because Plaintiffs' claims arise out of the Defendant Banks' collection of SIBL deposits into bank accounts at the Defendant Banks and the transfers of funds out of those bank accounts, which are traditional banking activities, Plaintiffs' claims arise out of "banking" transactions. *See, e.g.*, Am. Pet. ¶ 81 ("At all relevant times Defendants provided banking services to Stanford."). Even if Plaintiffs' claims did not arise out of "banking" transactions, the claims unquestionably arise out of "financial operations."

28. Moreover, as Plaintiffs' Amended Petition makes clear, the banking and financial operations at issue were foreign or international in character. Plaintiffs have identified class representatives from various foreign countries and have named several foreign banks as Defendants. *See* Am. Pet. ¶¶ 6-17. In addition, Plaintiffs allege the following:

- "The Stanford fraud was based upon the collection of billions of dollars from unsuspecting victims in the United States, *Canada, Mexico, Columbia, Peru, Venezuela, and elsewhere in the world*." *Id.* at 2 ("Preliminary Statement") (emphasis added).

- "SFG sold purported certificates of deposit ("CDs") issued by *Antigua-based* SIBL . . . ." *Id.* (emphasis added).

9

- "Stanford used HSBC to collect all wire transfers intended by the victims to be deposited in [*Antiguan-based*] SIBL in *British Pound Sterling, Euros, and other European currencies.*" *Id.* at 2-3 (emphasis added).

- "Similarly, Stanford used TD Bank to collect all such deposits in US dollar and *Canadian dollar* denominations." *Id.* at 3 (emphasis added).

- Stanford directed the Executive Vice President of SGPB Suisse in *Geneva, Switzerland* to make certain payments. *Id*. at 3.

- "Trustmark received daily bundles of checks that Class members intended for deposit *in Antigua.*" *Id*. at 4 (emphasis added).

- "SIBL marketed CDs and promised higher rates of return on those CDs than were generally offered at banks in the United States." *Id*. ¶ 20.

- "In its December, 2008, Monthly Report, SIBL purported to have more than 30,000 clients *from 131 countries* . . . ." *Id*. (emphasis added).

- To give the appearance of a capital infusion, Stanford falsified accounting records by recording bogus transactions involving *Antiguan* real estate. *Id*. ¶¶ 52-53.

- SIBL's senior investment officer was instructed to tell "customers and prospective customers that SIBL's entire investment portfolio was managed by a *global network* of money managers . . . ." *Id*. ¶ 58 (emphasis added).

- "Stanford also represented to Plaintiffs and members of the Class that it was subject to the laws of the *Commonwealth of Antigua and Barbuda ("Antigua")* and the regulatory oversight of *that nation's* Financial Services Regulatory Commission [] ("FSRC")." *Id*. ¶¶ 75 (emphasis added).

- "Thus, Stanford was engaged in a multi-year, *international* scheme in which literally every transaction was undertaken with the purpose and intent of defrauding the class." *Id*. ¶ 79 (emphasis added).

- Defendants failed to heed an April 1999 United States Department of Treasury Financial Crimes Enforcement Network ("FinCEN") concerning "Enhanced Scrutiny for Transactions Involving *Antigua and Barbuda*." *Id*. ¶¶ 98-104 (emphasis added).

- "Stanford provided members of the Class with deposit instructions indicating that they could make deposits in *Antigua-based SIBL by wiring funds to HSBC in London*." *Id*. at ¶ 108 (emphasis added).

- "HSBC was aware of these instructions . . . and expressly agreed with Stanford to receive wire deposits from members of the Class for further transfer to SIBL *in Antigua*." *Id*. ¶ 109 (emphasis added).

10

- **"**[T]he funds that members of the class transferred to HSBC, with the intent that such funds would be transferred to SIBL *in Antigua* for deposit there, were redirected by HSBC . . . to bank accounts in Houston, Texas and elsewhere . . . ." *Id.* ¶ 111 (emphasis added).

- "As a correspondent bank of SFG, TD Bank was required, pursuant to *Canadian money laundering regulations*, to conduct thorough due diligence on SIBL and SFG's operations." *Id.* ¶ 114 (emphasis added).

- "TD Bank . . . expressly agreed with Stanford to receive wire deposits from members of the Class for further transfer to SIBL *in Antigua*." *Id.* ¶ 117 (emphasis added).

- "Stanford made regular monthly payments to an outside auditor . . . from a Stanford . . . account at Trustmark Bank in Houston, Texas . . . [and] made additional payments to [the auditor] from its private *Swiss accounts at [SGPB Suisse]*." *Id.* ¶¶ 126-127 (emphasis added).

- "Trustmark received large and highly suspicious wire transfers from HSBC and TD Bank of funds that were received by those institutions from members of the Class and intended for deposit with SIBL in Antigua." *Id.* ¶ 132.

- "Class members who paid by check in U.S. dollars sent their checks to SIBL in Antigua, where those checks were bundled and sent daily to Trustmark National Bank in Houston, Texas, for deposit there." *Id.* ¶ 133.

- "[Bank of Houston] received large and highly suspicious wire transfers from HSBC and TD Bank . . . ." *Id.* ¶ 138.

29. In this case, the nexus to transactions involving international or foreign banking could hardly be stronger. Because Defendant Trustmark is a U.S. national bank, Defendant BoH is a corporation organized under the laws of the United States, and Plaintiffs' claims arise out of foreign or international banking and financial operations, removal is proper under 12 U.S.C. § 632.

## C. EXCLUSIVE JURISDICTION IN FEDERAL COURT

30. This case is also removable because a federal court has assumed exclusive jurisdiction over the matters involved in Plaintiffs' Amended Petition, including without limitation the fraudulent transfer claims Plaintiffs assert. In an amended order dated March 12,

11

2009, a federal court in the Northern District of Texas "assume[d] exclusive jurisdiction and [took] possession of the assets, . . . tangible and intangible, of whatever kind and description, wherever located, and the legally recognized privileges . . . of [SIBL, Stanford Group Company, Stanford Capital Management, LLC, Robert Allen Stanford, James M. Davis, Laura Pendergest-Holt, SFG, and The Stanford Financial Group Bldg Inc. (collectively the "Receivership Defendants")] and all entities they own or control . . . ." Exhibit B ¶ 1 (Am. Receivership Order).

31. The Receiver's "complete and exclusive control, possession, and custody of the Receivership Estate" lasts until the expiration date of the order. *Id*. ¶ 4. All "creditors" of the Receivership Defendants and "all other persons" are "restrained and enjoined, without prior approval of the Court, from: (a) Any act to obtain possession of the Receivership Estate assets; . . . [or] (c) Any act to collect, assess, recover a claim against the Receiver or that would attach to or encumber the Receivership Estate . . . ." *Id*. ¶ 10.

32. In addition, the federal court expressly enjoined the Defendant Banks from taking numerous actions and affirmatively ordered the Defendant Banks to "hold and retain control" over accounts held by Stanford-related entities, to cooperate with the Receiver, and to provide the SEC and the Receiver with access to all records. *Id*. ¶¶ 12, 14 and 15.

33. The federal court's jurisdiction over the Receivership Estate is unqualified. *See, e.g.*, 28 U.S.C. § 754; WRIGHT, MILLER & MARCUS, FED. PRAC. & PROC. CIVIL 2d § 2985 (1997) (collecting cases). The Removing Banks deny that Plaintiffs' claims, including without limitation the fraudulent transfer claims, have any merit. As pleaded, however, Plaintiffs' claims raise issues that are already pending before another court that has issued a Receivership Order

establishing exclusive jurisdiction and has issued extant injunctions against creditors of the Receivership Estate and the Defendant Banks.

34. Indeed, on October 6, 2009, the United States Judicial Panel on Multidistrict Litigation transferred seven other Stanford-related cases to the United States District Court for the Northern District of Texas on the grounds that the cases all involved the same facts, witnesses, and documents. *See* Exhibit C (MDL Transfer Order). Upon removal to federal court, this case can likewise be transferred to the centralized proceedings in the Northern District of Texas, thus ensuring streamlined, just, and expeditious resolution of all Stanford-related actions.

35. Jurisdiction of this lawsuit is proper in federal, not state, court, and it may be removed on this ground.

**D.** **JURISDICTION UNDER 28 U.S.C. §1441(a) and (b)**

36. In addition, this case is removable pursuant to 28 U.S.C. §1441(a) and (b), which permit removal of any civil action over which the district courts of the United States have original jurisdiction. The district courts of the United States have original jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States. *See* 28 U.S.C. § 1331.

37. Federal question jurisdiction is present in this case because Plaintiffs' action is founded on claims arising under the laws of the United States. Plaintiffs assert in Count Four of their Amended Petition that Defendants Trustmark and BoH conspired in or aided and abetted SIBL's alleged fraud, contending that Trustmark and BoH knew or should have known of SIBL's alleged fraud by virtue of their obligations under "U.S. anti-money laundering laws and regulations, to conduct a thorough investigation of any suspicious and potentially illegal banking

13

activity." Am. Pet. ¶¶ 131 & 137; *see also id.* ¶ 103. Although Defendants Trustmark and BoH deny that such laws and regulations establish a relevant standard of care or create a duty in favor of Plaintiffs, Plaintiffs' Amended Petition nonetheless necessarily raises and requires resolution of substantial and disputed issues regarding Trustmark's and BoH's duties under federal anti-money laundering statutes and regulations and their compliance with the same, and it implicates a serious federal interest warranting the exercise of federal jurisdiction.

## JURY DEMAND

38.     Plaintiffs demanded a jury trial, *see* Am. Pet. ¶ 149, and the Removing Defendants likewise demand a jury trial of the removed action.

## CONCLUSION

WHEREFORE, the Removing Defendants now pray that the above action now pending in the 129th Judicial District Court of Harris County, Texas be removed to the United States District Court for the Southern District of Texas, Houston Division, and that said district court assume jurisdiction of this action and enter such other and further orders as may be necessary to accomplish the requested removal and promote the ends of justice.

Respectfully submitted,

| **THE TORONTO-DOMINION BANK** | **TRUSTMARK NATIONAL BANK** |
|---|---|
| By:  */s/ James Eloi Doyle*<br>      James Eloi Doyle<br>      Attorney-in-Charge<br>      State Bar No. 06093500<br>      S.D. Tex. Bar No. 4848<br>      DOYLE, RESTREPO, HARVIN & ROBBINS, LLP<br>      600 Travis Street, Suite 4700<br>      Houston, Texas 77002<br>      Telephone: (713) 228-5100<br>      Facsimile: (713) 228-6138<br>      E-mail: jdoyle@drhrlaw.com<br><br>OF COUNSEL:<br><br>Robert Plotkin<br>Jeremy S. Byrum<br>McGUIREWOODS LLP<br>1050 Connecticut Ave. N.W. Suite 1200<br>Washington D.C. 20036<br>Telephone: (202) 857-1750<br>Facsimile: (202) 857-1737<br>E-mail: rplotkin@mcguirewoods.com<br><br>*Counsel for Defendant The Toronto-Dominion Bank* | By:  */s/ Robin C. Gibbs*<br>      Robin C. Gibbs<br>      Attorney-in-Charge<br>      State Bar No. 07853000<br>      S.D. Tex. Bar No. 4790<br>      GIBBS & BRUNS LLP<br>      1100 Louisiana, Suite 5300<br>      Houston, Texas 77002<br>      Telephone: (713) 650-8805<br>      Facsimile: (713) 750-0903<br>      E-mail: rgibbs@gibbsbruns.com<br><br>OF COUNSEL:<br><br>Robert J. Madden<br>Jeffrey C. Kubin<br>Ashley McKeand<br>GIBBS & BRUNS LLP<br>1100 Louisiana, Suite 5300<br>Houston, Texas 77002<br>Telephone: (713) 650-8805<br>Facsimile: (713) 750-0903<br><br>*Counsel for Defendant Trustmark National Bank* |

| | |
|---|---|
| **BANK OF HOUSTON**<br><br>By: __/s/ Jim D. Hamilton_____<br>        Jim D. Hamilton<br>        Attorney-in-Charge<br>        State Bar No. 98829300<br>        S.D. Tex. Bar No. 2089<br>        ROSS, BANKS, MAY, CRON & CAVIN, P.C.<br>        2 Riverway, Suite 700<br>        Houston, TX  77056-1918<br>        Telephone:  (713) 626-1200<br>        Facsimile:  (713) 623-6014<br><br>OF COUNSEL:<br><br>Anthony F. Sullivan<br>ROSS, BANKS, MAY, CRON & CAVIN, P.C.<br>2 Riverway, Suite 700<br>Houston, TX  77056-1918<br>Telephone:  (713) 626-1200<br>Facsimile:  (713) 623-6014<br><br>*Counsel for Defendant Bank of Houston* | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of November, 2009, a true and correct copy of the foregoing Notice of Removal was served via facsimile and first class mail, postage prepaid, upon:

Paul Lackey
LACKEY HERSHMAN, LLP
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219
Telephone: (214) 560-2201
Facsimile: (214) 560-2203

Peter D. Morgenstern
Gregory A. Blue
Rachel K. Marcoccia
MORGENSTERN & BLUE, LLC
885 Third Avenue
New York, New York 10022
Telephone: (212) 750-6776
Facsimile: (212) 750-3128

*Counsel for Plaintiffs*

                                                                         /s/ Robin C. Gibbs
                                                                         Robin C. Gibbs