IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PEGGY ROIF ROTSTAIN, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:09-CV-2384-N |
| | § | |
| TRUSTMARK NATIONAL BANK, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## <u>ORDER</u>

This Order addresses Defendant HSBC Bank PLC's ("HSBC") motion to dismiss for lack of jurisdiction [28]; Defendant Toronto-Dominion Bank's ("TD") motion to dismiss [31]; Defendant SG Private Banking (Suisse) S.A.'s ("SG Suisse") motion to dismiss for lack of jurisdiction [32]; Defendant Trustmark National Bank's ("Trustmark") motion to dismiss [36]; Defendant Bank of Houston's ("BOH") motion to dismiss [39]; BOH's motion to dismiss for failure to state a claim [154]; HSBC's motion to dismiss intervenor's complaint [155]; SG Suisse's motion to dismiss the intervenor complaint [157]; TD's motion to dismiss the Official Stanford Investors Committee's intervenor complaint [159]; Defendant Blaise Friedli's motion to dismiss for lack of jurisdiction [160]; and Trustmark's motion to dismiss the intervenor complaint [162]. For the reasons that follow, the Court grants in part and denies in part the motions.

## I. THE HISTORY OF THE PARTIES' DISPUTE

This case arises out of the Ponzi scheme perpetrated by R. Allen Stanford, his associates, and various entities under his control (collectively, "Stanford"). The facts of Stanford's scheme are well-established, *see, e.g.*, *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 188–89 (5th Cir. 2013), and will not be recounted in great detail here. Reduced to its essence, Stanford's scheme involved the sale of fraudulent certificates of deposit ("CDs") issued by the Stanford International Bank Limited ("SIBL"), an offshore bank based in Antigua. Although Stanford represented to investors that CD proceeds were only invested in low risk, high return funds, in reality the CD proceeds were used to finance Stanford's own extravagant lifestyle, and to pay off previous investors. The facts supporting Plaintiffs' claims in this action are complex. At root, Plaintiffs allege the Defendant financial institutions provided banking services that supported and furthered Stanford's scheme.

### A. Procedural Background

In August 2009, a group of Stanford investors seeking to represent a putative class ("Class Plaintiffs") filed their original petition in the 129th District Court for Harris County, Texas. Class Plaintiffs named as Defendants Trustmark, HSBC, TD, SG Suisse, and BOH (collectively, "Bank Defendants"). Class Plaintiffs asserted claims for fraudulent transfers under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), TEX. BUS. & COM. CODE ANN. §§ 24.001–24.013, conspiracy to commit fraud, and aiding and abetting fraud. After the Bank Defendants removed the action to federal court, the Judicial Panel for Multi-District

Litigation ("MDL") transferred the case to this District as part of the ongoing Stanford MDL proceedings.

After Bank Defendants had filed motions to dismiss Class Plaintiffs' amended state court petition, the Official Stanford Investors Committee ("OSIC")[1] filed a motion to intervene in the case. *See* Mot. Intervene, Dec. 5, 2011 [96]. OSIC purported to join in the prosecution of the Class Plaintiffs' fraudulent transfer claims. *See id.* at 4. The Court granted OSIC's motion to intervene, *see* Dec. 6, 2012 Order [129], and OSIC filed two intervenor complaints, *see* Intervenor Compl., Dec. 14, 2012 [130] (the "First Intervenor Complaint" or "FIC"); Intervenor Complaint, Feb. 15, 2013 [133] (the "Second Intervenor Complaint" or "SIC").

In the FIC, OSIC brings claims against SG Suisse and Blaise Friedli, an employee of SG Suisse's. OSIC asserts claims under TUFTA, for aiding and abetting/participation in fraudulent transfers, breach of fiduciary duty, aiding and abetting/participation in breach of fiduciary duty, aiding and abetting/participation in a fraudulent scheme, aiding and abetting/participation in conversion, aiding and abetting/participation in violations of the Texas Securities Act ("TSA"), and civil conspiracy. The SIC, meanwhile, asserts claims against Trustmark, HSBC, TD, and BOH. The claims are the same as those in the FIC,

---

[1]The Official Stanford Investors Committee is a body tasked with representing Stanford investors and has similar rights and responsibilities as a bankruptcy creditors' committee appointed under Title 11 of the United States Code. *See generally* Aug. 10, 2010 Order [1149], *in SEC v. Stanford Int'l Bank, Ltd.*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009).

except that the SIC omits claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and aiding and abetting violations of the TSA.

In response to OSIC's intervention, Class Plaintiffs moved for leave to amend their petition to include allegations and claims asserted in OSIC's intervenor complaints.  *See* Mot. Leave File Am. Compl., Dec. 14, 2012 [130]; Mot. Leave File Am. Compl., Mar. 17, 2014 [182].  The Court granted both motions and ordered "Plaintiffs' Class Complaint shall be considered to incorporate by reference Intervenor Plaintiff [OSIC's] claims against Defendants [SG Suisse and Friedli] . . . and OSIC's claims against [Trustmark, TD, and HSBC] . . . ."  Aug. 25, 2014 Order [212].  In light of the Court's incorporation of the intervenor complaints into the Class Plaintiffs' amended petition, the Court applies arguments raised in Defendants' motions to dismiss the intervenor complaints equally to Class Plaintiffs' claims.

Of final note, in addition to their Rule 12(b)(6) motions, HSBC, SG Suisse, and Friedli raised motions to dismiss for lack of personal jurisdiction.  The Court denied these motions and further declined to alter the result on motions for reconsideration.  *See* June 5, 2014 Order [194]; Sept. 8, 2014 Order [216]; Dec. 9, 2014 Order [221].  Accordingly, the Court bypasses these parties' jurisdictional arguments raised in their still-pending motions to dismiss.

## II. THE LEGAL STANDARD

### A. Rule 12(b)(6)

When faced with a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider documents outside of the pleadings if they fall within

certain limited categories.  First, "[a] court is permitted ... to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).  Second, "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer*, 484 F.3d at 780.  Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)).  Finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "[t]he district court took appropriate judicial notice of publically available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

### B. Rule 9(b)

Federal Rule of Civil Procedure 9(b) requires parties alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).  However, "[b]y its clear terms, Rule 9(b) applies only to averments of fraud or

mistake, not to averments of negligence, breach of fiduciary duty or non-fraudulent misstatement." *Tigue Inv. Co., Ltd. v. Chase Bank of Tex., N.A.*, 2004 WL 3170789, at \*2 (N.D. Tex. 2004). Rule 9(b) may also apply "when fraudulent conduct is alleged to underlie a claim for which fraud is a possible – but not a necessary – element. In such cases, particularity is only required to the extent that a plaintiff in fact alleges fraud." *Id.* at \*2. Finally, Rule 9(b) also applies to claims brought under Article 33 of the Texas Securities Act ("TSA"). *See Billitteri v. Sec. America, Inc.*, 2010 WL 6785484, at \*4–5 (N.D. Tex. 2010) (concluding Rule 9(b) is appropriately applied to state securities law claims). Pursuant to the above principles, the Court applies Rule 9(b) to the averments of fraud supporting Plaintiffs' claims.[2]

### III. THE TUFTA CLAIMS

#### A. The Court Dismisses Class Plaintiffs' TUFTA Claims

Defendants argue Class Plaintiffs are barred from asserting TUFTA claims, both by the terms of TUFTA itself, and by the Receivership Order active in the Stanford cases. *See, e.g.*, TD's Mot. Dismiss 4–5. In *In re MortgageAmerica Corp.*, 714 F.2d 1266 (5th Cir.

---

[2]In the Fifth Circuit, a plaintiff must plead "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (alteration in original) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (internal quotation marks omitted)). In effect, Rule 9(b) requires a plaintiff to state "the who, what, when, where, and how" of alleged fraud. *Id.* at 179 (internal quotation marks omitted). "What constitutes 'particularity' will necessarily differ with the facts of each case." *Id.* (quoting *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992)); *see also* Nov. 30, 2011 Order 12–13, *in SEC v. SIB*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009) (holding SEC's various allegations of fraud were sufficient to put defendants on notice such that they could prepare a defense).

1983), the Fifth Circuit analyzed whether individual creditors could bring an action under TUFTA's precursor statute on behalf of an entity in bankruptcy. *See id.* at 1276–77. The Court reasoned that because a fraudulent transfer action seeks the return of assets previously held by the debtor, the institution of bankruptcy proceedings and the Bankruptcy Code's automatic stay provision vest such a cause of action exclusively in the debtor's bankruptcy trustee. *Id.*

Although the Stanford entities are in receivership, not bankruptcy, the goals of each proceeding are identical. *See, e.g.*, *S.E.C. v. Wealth Mgmt. LLC*, 628 F.3d 323, 334 (7th Cir. 2010) ("The goal in both securities-fraud receiverships and liquidation bankruptcy is identical – the fair distribution of the liquidated assets."). Moreover, the active Receivership Order in the Stanford Receivership contemplates a stay of all causes of action seeking to recover assets properly belonging to the Stanford entities. *See* Second Am. Order Appointing Receiver 4 [1130] (the "Receivership Order"), *in SEC v. Stanford Int'l Bank Ltd.*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009) ("Receiver is authorized to immediately take and have complete *and exclusive* control, possession, and custody of the Receivership Estate and to any assets traceable to assets owned by the Receivership Estate." (emphasis added)). When read in tandem with *In re MortgageAmerica*, the Receivership Order contemplates that fraudulent transfer actions, which seek the return of assets transferred from the Stanford entities, should be instituted exclusively by the Receiver and his assignees. Thus, the Court concludes that Class Plaintiffs can not properly maintain TUFTA actions for the return of Stanford's assets, and the Court dismisses those claims.

### B. OSIC's TUFTA Claims

***1. OSIC's TUFTA Claims Are Timely.*** – OSIC asserts fraudulent transfer claims under three different TUFTA provisions: section 24.005(a)(1), section 24.005(a)(2), and section 24.006(a).[3] Section 24.005(a)(1) claims must be brought "within four years after the transfer was made . . . or, if later, within one year after the transfer or obligation was or could reasonably have been discovered . . . ." TEX. BUS. & COM. CODE ANN. § 24.010(a)(1). Section 24.005(a)(2) claims must be brought "within four years after the transfer was made . . ." and Section 24.006(b) claims must be brought "within one year after the transfer was made." *Id.* §§ 24.010(a)(2), (a)(3).[4] Although Defendants differ on when OSIC's TUFTA claims accrued, they argue that August 27, 2009, the date Stanford executive James Davis pled guilty for his role in the fraud, is the date potential plaintiffs should have been aware of their claims. *See, e.g.*, TD's Mot. Dismiss Intervenor Compl. 9.[5] Under this view, the latest possible date OSIC's TUFTA claims could have accrued was August 10, 2010, the date OSIC was formed. *See id.*

The Court concludes that insofar as OSIC asserts claims on behalf of investors, *American Pipe* tolling compels a different date of reference for analysis of limitations.

---

[3]This Order refers to TUFTA claims brought pursuant to sections 24.005(a)(2) and 24.006(a) as 'Constructive TUFTA Claims."

[4]The TUFTA limitations periods are considered statutes of repose, not statutes of limitations. *Nathan v. Whittington*, 408 S.W.3d 870, 874 (Tex. 2013).

[5]The Fifth Circuit has noted that Davis's guilty plea served as notice that Stanford was operating a Ponzi scheme. *See Democratic Senatorial Campaign Comm.*, 712 F.3d at 197–98.

*American Pipe* tolling is a tolling rule read into Rule 23 under which "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974). TD and Trustmark both contend that *American Pipe* does not apply because OSIC is not a member of the putative class on whose complaint it seeks tolling. *See* TD's Reply Supp. Mot. Dismiss Intervenor Compl. 13–14 [172]; Trustmark's Reply Supp. Mot. Dismiss Intervenor Compl. 16–17 [177].

In support of its argument for *American Pipe* tolling, OSIC cites *Official Committee of Asbestos Claimants of G-I Holdings, Inc. v. Heyman*, 277 B.R. 20 (S.D.N.Y. 2002), which the Court finds persuasive. In *Heyman*, the court extended the benefit of *American Pipe* tolling to a creditors' committee bringing a fraudulent transfer action. *Id.* at 29, 30–33. To the extent OSIC is charged with asserting claims on behalf of investors, including investors who would have been included in the class as defined by Class Plaintiffs' amended petition, *American Pipe* tolling tolls OSIC's claims from the time that Class Plaintiffs filed their initial petition.[6]

---

[6]Defendants have not asserted any limitations arguments as to Class Plaintiffs' initial filing. Accordingly, the Court defers consideration of any remaining limitations arguments based on that date.

The Court also notes an apparent incongruity between its previous determination that Class Plaintiffs may not assert TUFTA claims, and its holding here that OSIC may benefit from *American Pipe* tolling to assert TUFTA claims solely in its capacity as a representative for investors. The issue is resolved by this Court's previous determination that OSIC has standing separate and apart from the Receiver to bring claims on behalf of Stanford investors.

ORDER – PAGE 10

Insofar as OSIC asserts TUFTA claims on behalf of the Receiver, the Court finds the discovery rule preserves section 24.005(a)(1) claims, but not the Constructive TUFTA Claims.[7]  As mentioned above, Section 24.005(a)(1) claims must be brought "within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered." TEX. BUS. & COM. CODE ANN. § 24.010(a)(1).  There is no similar tolling provision for claims under sections 24.005(a)(2) and 24.006(a).  Here, OSIC asserts entitlement to tolling under the discovery rule.  *See* FIC ¶¶ 88–90; SIC ¶¶ 71–73.  The Court has previously declined to dismiss potentially time-barred claims when plaintiffs have asserted the discovery rule, which necessarily raises consideration of factual questions.  *See, e.g.*, Dec. 5, 2014 Order 15–16 [64], *in Janvey v. Willis of Colorado Inc.*, Civil Action No. 3:13-CV-3980-N (N.D. Tex. filed Oct. 1, 2013).  For the same reasons, the Court declines to determine at this stage that OSIC cannot rely on the discovery rule.  However, because section 24.005(a)(2) and 24.006(a) claims do not provide for tolling under a discovery rule, the Court dismisses them insofar as OSIC brings them on behalf of the Receiver.[8]

---

*See* Sept. 24, 2012 Order 3–6 [33], *in Janvey v. IMG Worldwide, Inc.*, Civil Action No. 3:11-CV-0117-N (N.D. Tex. filed Jan. 18, 2011).

[7]Because *American Pipe* tolling preserves claims only for asserted members of a previously filed class action, and the Receiver is not an asserted member of the class, he does not benefit from *American Pipe* tolling.

[8]The Court also notes that the discovery rule is the only asserted basis for preserving OSIC's TUFTA claims against Friedli.  *See* Pl.-Intervenor's Resp. Br. Opp. Mot. Dismiss 68 n.26 & 75 n.30.  Thus, for the reasons discussed above, the Court denies dismissal of OSIC's section 24.005(a)(1) claims against Friedli.  The Court dismisses OSIC's section

**2. OSIC May Assert TUFTA Claims Against HSBC.** – HSBC argues that TUFTA should not be applied to what is essentially a transfer between two foreign entities. Specifically, HSBC claims that SIBL was an Antiguan entity, and its transfers to HSBC, a British entity, are thus entirely foreign to the United States and Texas.  HSBC cites *Morrison v. National Australia Bank, Ltd.*, 561 U.S. 247 (2010), which provides "[i]t is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States."  *Id.* at 255 (internal quotation marks omitted).

Despite this edict, however, *Morrison* also directs courts to look at the "focus" of domestic legislation in determining whether it should be given extraterritorial effect.  *Id.* at 266.  TUFTA is a statute designed to give relief to creditors of entities that have fraudulently transferred assets away from the entity in an effort to delay or obstruct those creditors.  This Court has appointed the Receiver in the Stanford cases as the sole representative charged with recovering Stanford's assets and making an equitable distribution to creditors who were harmed by Stanford's scheme.  *See generally* the Receivership Order.  Moreover, although SIBL was located in Antigua, it was but a cog in the vast Stanford machinery, which was organized and operated in Houston, Texas.  *See Janvey v. Alguire*, 2013 WL 2451738, at *2–3 (N.D. Tex. 2013).   Given TUFTA's focus, the Receiver's role as Stanford's representative, and Stanford's headquarters in Texas, the Court concludes TUFTA is properly applied to the TUFTA claims against HSBC.

---

24.005(a)(2) and 24.006(a) claims against Friedli.

The Court also declines to dismiss OSIC's TUFTA claims against HSBC based on principles of international comity.  "Comity is 'the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.'"  *Int'l Transactions, Ltd., v. Embotelladora Agral Regiomontana, SA de CV*, 347 F.3d 589, 593 (5th Cir. 2003) (quoting *Hilton v. Guyot*, 159 U.S. 113, 163–64 (1895)).  Dismissal of an action based on international comity may be appropriate "when there is litigation pending in a foreign forum or . . . when allowing a case to proceed in the United States would intrude on the interests of a foreign government."  *Perforaciones Exploracion y Produccion v. Maritimas Mexicanas, S.A. de C.V.*, 356 F. App'x 675, 681 (5th Cir. 2009).  Here, the Court finds that risk minimal.  The alleged fraudulent transfers are not in the possession of the English government, they are in the possession of HSBC.  England's rights and interests are not significantly burdened by the maintenance of an action against a private English entity.[9]

> **3. The Defendant Banks Are "Transferees" Under TUFTA.** – A number of the Bank Defendants argue that they can not be liable under TUFTA because banks are mere

---

[9]To the extent HSBC argues this action interferes with an English court's determination that the Antiguan Joint Liquidators are the proper party to liquidate the Stanford entities, this argument requires determination of fact questions and fails on a motion to dismiss.  *See Int'l Transactions*, 347 F.3d at 594 (listing the requirements for a U.S. federal court to honor a foreign judgment).

intermediaries, not transferees under the statute.[10]   The Fifth Circuit has held that with regards to the Bankruptcy Code's fraudulent transfer provision, in order to be considered a "transferee" an entity must have "dominion or control" over the disputed assets.   *In re Coutee*, 984 F.2d 138, 141 (5th Cir. 1993).   A recipient does not have dominion or control over assets if it, for instance, holds the assets "only for the purpose of fulfilling an instruction to make the funds available to someone else."   *Id.* (quoting *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988)).   The Texas Supreme Court has extended the "dominion or control" test to TUFTA claims.   *See Newsome v. Charter Bank Colonial*, 940 S.W.2d 157, 165–66 (Tex. 1996).

The Bank Defendants argue these holdings extend to TUFTA actions against banks for fees received in connection with account transfers.   The Court disagrees.   Bank Defendants note that in *In re Coutee*, the intermediary transferee law firm was permitted to keep the fees it withdrew from the disputed transfer.   *See, e.g.*, TD's Reply 15 [172] (citing *In re Coutee*, 984 F.2d at 140 n.1, 141.)   However, this argument ignores that the fraudulent transfer action at issue in *In re Coutee* specifically targeted the assets transferred by the intermediary law firm to the transferree bank; the bankruptcy trustee did not assert a fraudulent transfer claim as to the intermediary's fees.   *Id.* at 140.   *In re Coutee* thus says nothing about whether a mere intermediary as to one transfer may still constitute a transferee as to fees it receives in conjunction with that transfer.   Similarly, *Newsome*, which

---

[10]OSIC has clarified that it does not seek to recover the account transfers themselves, but only the service fees associated with the account transfers.   *See* Pl.-Intervenor's Resp. Mot. Dismiss 38.

Defendants also cite for support, did not address the issue of fees at all.  940 S.W.2d at 164–66.  The argument was either not raised or was not in issue.

The Court finds that a common sense reading of TUFTA, as well as *In re Coutee* and *Newsome* support the conclusion that a mere intermediary of an account transfer may nevertheless be held liable as a transferee of the fees associated with the account transfers. Simple application of the "dominion and control" test supports this conclusion.  The fees received by Bank Defendants for their services belonged to Bank Defendants and Bank Defendants alone.  Once held, Bank Defendants were free to do as they pleased with the funds.  No Defendant presents a compelling reason to depart from this common-sense understanding of the dominion and control test.

*4. The $95 Million Transfer to SG Suisse Constituted an "Asset."* – SG Suisse argues it cannot be held liable under TUFTA for an alleged $95 million transfer because it held a valid lien for that amount.  *See* SG Suisse's Mot. Dismiss Intervenor Compl. 16–17. TUFTA excludes from its definition of recoverable assets "property to the extent it is encumbered by a valid lien."  Tex. Bus. & Com. Code Ann. § 24.002(2)(A).  A "'[v]alid lien' means a lien that is effective against the holder of a judicial lien subsequently obtained by legal or equitable process or proceedings."  *Id.* § 24.002(13).  SG Suisse argues that because it held a valid, perfected lien for $95 million owed to it by Stanford, OSIC cannot bring a TUFTA action for return of that transfer.

The Court declines to dismiss this TUFTA claim because whether SG Suisse's security interest was valid requires resolution of factual questions.  In *Blackthorne v. Bellush*,

61 S.W.3d 439 (Tex. App. – San Antonio 2001, no pet.), the court held a security interest was not a "valid lien" where its holder had accepted the lien with knowledge of a pending TUFTA claim against the debtor.  *See id.* at 445–46.  OSIC advances a number of theories under which SG Suisse's lien would be invalid.  For instance, OSIC argues Stanford did not receive reasonably equivalent value for the lien because SG Suisse's loan was made to Allen Stanford in his personal capacity.  *See* Pl.-Intervenor's Resp. Mot. Dismiss 48.  As will be discussed, OSIC has made a number of allegations concerning SG Suisse's knowledge of Stanford's criminality.  Taken as true, these allegations are sufficient to establish that SG Suisse did not take its lien on the $95 million in good faith[11] and for reasonably equivalent value.  The Court thus declines to hold that the $95 million transfer did not constitute an "asset" under TUFTA.

> **5. The Court Dismisses Claims for Aiding and Abetting Fraudulent Transfers.** –
This Court has previously determined that Texas law does not recognize a cause of action for aiding and abetting fraudulent transfers.  *See* Dec. 17, 2014 Order 25–27 [114], *in The Official Stanford Investors Committee v. Greenberg Traurig, LLP*, Civil Action No. 3:12-CV-4641-N (N.D. Tex. filed Nov. 15, 2012).  Accordingly, and for the same reasons

---

[11]In defining the "good faith" standard, SG Suisse repeatedly makes reference to *Yokogawa Corp. of Am. v. Skye Int'l Holdings, Inc.*, 159 S.W.3d 266 (Tex. App. – Dallas 2005, no pet.), which defined good faith as the absence of a secret agreement. *Id.* at 269–70. While a secret agreement may be one example of conduct evincing a lack of good faith, it is far from the only showing that will suffice. *See, e.g.*, *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 439–40 (5th Cir. 2013) (finding a lack of good faith based on inside knowledge of the debtor's financial problems).

discussed in that Order, the Court dismisses OSIC's claims for aiding and abetting fraudulent transfers.

### *6. OSIC Adequately Pleads Its Section 24.005(a)(1) Fraudulent Transfer Claims.*

– A number of Defendants contend that OSIC has failed to plead adequately that the transfers at issue were made "with actual intent to hinder, delay, or defraud any creditor of the debtor . . . ." TEX. BUS. & COM. CODE ANN. § 24.005(a)(1); *see, e.g.*, Trustmark's Mot. Dismiss Intervenor Compl. 9.  In the Fifth Circuit, however, "proving that [a transferor] operated as a Ponzi scheme establishes the fraudulent intent behind the transfers it made." *Janvey v. Alguire*, 647 F.3d 585, 598 (5th Cir. 2011) (quoting *SEC v. Res. Dev. Int'l, LLC*, 487 F.2d 295, 301 (5th Cir. 2007)).[12]

Faced with this Ponzi presumption, Defendants contend that in order for the presumption to apply, a transfer from a Ponzi scheme transferor must have been made "in furtherance of" the Ponzi scheme.  *See, e.g.*, Trustmark's Mot. Dismiss Intervenor Compl. 9–11 (citing *Crawford v. Lee*, 2011 WL 2115824, at *3 (N.D. Tex. 2011)).  However, this Court has already declined to read such a requirement into the Ponzi presumption.  *See* July 11, 2013 Order 7–8 [44], *in Janvey v. Univ. of Miami*, Civil Action No. 3:11-CV-0041-N (N.D. Tex. filed Jan. 6, 2011).  Accordingly, the Court determines OSIC has stated a claim under TUFTA section 24.005(a)(1).[13]

---

[12]OSIC makes a number of allegations that Stanford was operating as a Ponzi scheme. *See, e.g.*, SIC ¶¶ 29–33.

[13]Even if OSIC were required to plead the transfers were in furtherance of the Ponzi scheme, the Court would conclude it has done so.  As will be discussed, OSIC alleges the

SG Suisse argues further that OSIC has failed to adequately allege facts supporting the conclusion that Defendants did not take the transfers in good faith and for reasonably equivalent value.  *See, e.g.*, SG Suisse's Mot. Dismiss Intervenor Compl. 17–21 [157]. TUFTA provides that a "transfer or obligation is not voidable under Section 24.005(a)(1) of this code against a person who took in good faith and for a reasonably equivalent value . . . ." TEX. BUS. & COM. CODE ANN. § 24.009(a).  As to TUFTA claims brought pursuant to section 24.005(a)(1), this defense is an affirmative defense on which a defendant bears the burden of proof.  *Hahn v. Love*, 321 S.W.3d 517, 526 (Tex. App. – Houston [1st Dist.] 2009, pet. denied).  Nevertheless, SG Suisse argues it is entitled to dismissal on this basis.  *See* SG Suisse's Mot. Dismiss Intervenor Compl. 17 (citing *Clark v. Amoco Prod. Inc.*, 794 F.2d 967, 970 (5th Cir. 1986) (stating that dismissal may be appropriate if an affirmative defense appears clearly on the face of the pleadings).

The Court concludes that SG Suisse's entitlement to the affirmative defense does not clearly appear on the face of the complaint and SG Suisse is thus not entitled to dismissal. As discussed below, *see infra* Subpart IV.G.1, OSIC has alleged facts which, if true, would demonstrate the voidability of SG Suisse's lien.  If OSIC proves its case in that regard, the transfer of $95 million to satisfy that debt would have been of no value to the Stanford creditors.   Moreover, OSIC makes a number of allegations concerning SG Suisse's awareness of Stanford's wrongdoing, *see infra* Subpart IV.G.1, thereby precluding a finding

Defendant banks played an instrumental role in facilitating the financial aspects of the Ponzi scheme.  The fees paid to the banks for their services would unquestionably constitute payments "in furtherance of" the Ponzi scheme.

ORDER – PAGE 18

of good faith at this stage.  The Court declines to apply the TUFTA good-faith/reasonably equivalent-value defense on the face of the pleadings.

Finally, the Court declines to dismiss OSIC's fraudulent transfer claims for failure to plead its status as a creditor.  Sections 24.005(a)(1) and 24.005(a)(2) require a plaintiff to demonstrate that it was a creditor "before or within a reasonable time after the transfer was made or the obligation was incurred." TEX. BUS. & COM. CODE ANN. § 24.005(a).  Similarly, Section 24.006(a) requires demonstration that the plaintiff's claim arose before the transfer was made by the transferor.  *Id.* § 24.006(a).  BOH argues that because OSIC hasn't explicitly pled its status as a creditor or when it attained creditor status, its TUFTA claims must be dismissed.  *See* BOH's Mot. Dismiss Intervenor Compl. 25–26.  However, insofar as OSIC is acting as an assignee of the Receiver, the Receiver's standing to assert TUFTA claims on behalf of the Stanford entities is well-established.  *See Democratic Senatorial Campaign Comm.*, 712 F.3d at 190.  The Court has also determined that OSIC has independent standing to assert fraudulent transfer claims on behalf of investors, and to return the proceeds of those claims to the Receivership Estate.  *See* Sept. 24, 2012 Order 3–6 [33], *in Janvey v. IMG Worldwide, Inc.*, Civil Action No. 3:11-CV-0117-N (N.D. Tex. filed Jan. 18, 2011).  OSIC's failure to plead when exactly it became a creditor for the purposes of TUFTA is of no consequence.

### 7. OSIC Adequately Pleads Sections 24.005(a)(2) and 24.006(a) TUFTA Claims. –

Defendants assert OSIC's TUFTA claims under Sections 24.005(a)(2) and 24.006(a) are deficient because OSIC fails to plead the transfers were made without receiving reasonably

equivalent value. TUFTA sections 24.005(a)(2) and 24.006(a), unlike section 24.005(a)(1), include as an essential element that the transferee did not provide reasonably equivalent value. *See* TEX. BUS. & COM. CODE ANN. §§ 24.005(a)(2), 24.006(a). However, OSIC does allege that Stanford was engaged in a Ponzi scheme at the time the disputed transfers were made. *See, e.g.*, SIC ¶¶ 29–44. The Fifth Circuit has narrowly construed the circumstances in which even an innocent third party can provide services to a Ponzi scheme that are considered to have value. *See generally Janvey v. Golf Channel*, 780 F.3d 641 (5th Cir. 2015). By alleging Stanford was engaged in a Ponzi scheme and that Bank Defendants provided services to the scheme, OSIC has raised a reasonable inference that the transfers were provided without "reasonable equivalent value" as the law has come to define that term.

  *8. OSIC Maintains Valid TUFTA Claims Against Friedli*. – Friedli asserts that the TUFTA claims against him in his individual capacity should be dismissed because OSIC does not allege that any fees were paid directly to Friedli. *See* Friedli's Mot. Dismiss 13–14 [160]. However, OSIC does allege that Friedli served on Stanford's "International Advisory Board," a role for which he was compensated $50,000.00 annually. FIC ¶ 50. Accordingly, the Court denies Friedli's motion to dismiss the TUFTA claims against him.

## IV. THE PARTIES' TORT CLAIMS

### A. OSIC's Standing

  Defendants argue OSIC lacks standing to assert tort claims on behalf of the Receivership Estate because the Receivership Estate did not suffer tort-based injuries. *See, e.g.*, TD's Mot. Dismiss Intervenor Compl. 21–26. The Court has rejected similar arguments

in the past and held that the Receiver has standing to assert tort claims based on the harm to the Receivership Estate's ability to repay its creditors. *See* Sept. 11, 2013 Order [58], *in Janvey v. Adams & Reese*, Civil Action No. 3:12-CV-0495-N (N.D. Tex. filed Feb. 16, 2012). Given that OSIC is asserting claims as the Receiver's assignee, *e.g.*, FIC ¶ 4, it too has standing to assert tort claims belonging to the Receivership Estate.

### B. Respondeat Superior

SG Suisse argues that allegations against Friedli pertaining to his membership on the Stanford International Advisory Board cannot be held against SG Suisse under a theory of respondeat superior. *See* SG Suisse's Mot. Dismiss Intervenor Compl. 30–31. Generally, an employer may only be held liable under a theory of respondeat superior if the employee's tortious conduct occurred "within the course and scope of employment." *Buck v. Blum*, 130 S.W.3d 285, 188 (Tex. App. – Houston [14th Dist.] 2004, no pet.). Whether an employee was acting in the course and scope of his employment requires consideration of factual questions. *See, e.g.*, *N. River Ins. Co. v. Purdy*, 733 S.W.2d 630, 634 (Tex. App. – San Antonio 1987, no writ). Accordingly, the Court declines to hold at this stage that SG Suisse may not be held liable for Friedli's alleged torts.

### C. Propriety of Class Treatment

Trustmark and BOH both seek dismissal of the Class Plaintiffs' causes of action, arguing class treatment is plainly incompatible with the nature of Class Plaintiffs' claims. *See* Trustmark's Mot. Dismiss 26–29 ; BOH's Mot. Dismiss 26–29. Because the parties have not extensively briefed the issues relevant to class certification in this case, the Court

declines to strike any of the class claims at this early point in the proceedings. *See, e.g.*, *In re Allstate Ins. Co. Underwriting & Rating Practices Litig.*, 917 F. Supp. 2d 740, 751 (M.D. Tenn. 2008) (declining to strike class claims prior to submission of class certification briefing).

### D. Limitations

As with OSIC's TUFTA claims, Defendants seek dismissal of a number of Plaintiffs' tort claims based on limitations. Defendants move for dismissal of OSIC's claims based on conversion, and conspiracy, each of which is subject to a two-year limitations period. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a); *Stroud v. VBFSB Holding Corp.*, 917 S.W.2d 75, 82 (Tex. App. – San Antonio 1996, writ denied). As an initial matter, the Court determines that, to the extent these claims have been filed after the applicable limitations period, neither relation back nor *American Pipe* tolling preserve these claims. *American Pipe* only tolls class members' claims to the extent those claims are closely related to those originally asserted by the class. *See In re Cathode Ray Tube Antitrust Litig.*, 27 F. Supp. 3d 1015, 1020–21 (N.D. Cal. 2014) (interpreting *American Pipe* and *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 352–53 (1983), to conclude plaintiffs could not use *American Pipe* to preserve claims different from those originally filed by the class); *In re Commonwealth Oil/Tesoro Petroleum Corp. Sec. Litig.*, 467 F. Supp. 227, 258–60 (W.D. Tex. 1979) (Higginbotham, J.) (citing *Johnson v. REA, Inc.*, 421 U.S. 454, 467 (1975)) (holding *American Pipe* tolling preserved only later filings that asserted "exactly the same cause of action" as the original complaint).

OSIC also argues relation back under Rule 15(c)(1) may apply to intervening parties under Rule 24.  It cites in support a series of cases that have permitted an intervening party's claims to relate back to a different party's previous complaint where no prejudice would result to the defendant.  *See, e.g.*, *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Cal.*, 629 F. Supp. 2d 1091, 1102–04 (E.D. Cal. 2009), *rev'd in part on other grounds*, 536 F.3d 1034 (9th Cir. 2010); *Ross v. Patrusky, Mintz & Semel*, 1997 WL 214957 (S.D.N.Y. 1997).  Even were the Court to conclude that Rule 24 intervening parties' claims could relate back under Rule 15, relation back in this case would be appropriate only as to OSIC's claims asserted on behalf of investors.  The original complaint that OSIC seeks to relate back to was filed by investors.  Prejudice would result to Bank Defendants if OSIC were permitted to add claims in its capacity as the Receiver's assignee.

However, as discussed above, *see supra* Subpart III.B.1, Plaintiffs invoke the discovery rule, and the Court declines at this stage to engage the factual questions necessary for resolution of this issue.  The Court therefore declines to dismiss either OSIC's or Class Plaintiffs' tort claims at this stage.

### E. Aiding and Abetting Tort Claims

Defendants challenge a number of the derivative liability claims for aiding and abetting on the grounds that Texas does not recognize them.  The Court has previously declined to hold that Texas does not recognize liability for aiding and abetting torts.  *See, e.g.*, Dec. 17, 2014 Order 19 [114], *in The Official Stanford Investors Committee v.*

*Greenberg Traurig, LLP*, Civil Action No. 3:12-CV-4641-N (N.D. Tex. filed Nov. 15, 2012). In accordance with the same reasoning, the Court declines to do so here.

### F. Class Plaintiffs' TUFTA-Based Tort Claims

SG argues that Class Plaintiffs, in their original petition, failed to plead a claim for civil conspiracy because their underlying TUFTA claims were invalid. Because the Court agrees that Class Plaintiffs' can not assert TUFTA claims, *see supra* Part III.A, the Court also dismisses Class Plaintiffs' claims for conspiracy to violate TUFTA.

### G. Plaintiffs' Tort Claims

Defendants also challenge the adequacy of Plaintiffs' pleadings as to certain elements of their claims. For instance, Defendants make a number of arguments concerning Plaintiffs' failure to plead claims for, for example, aiding and abetting fraud, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty, and aiding and abetting conversion. In particular, Defendants generally assert Plaintiffs have failed to plead knowledge of Stanford's fraud and a specific agreement to further the fraud.

*1. Plaintiffs Adequately Plead Scienter.* – First, Plaintiffs make a number of allegations concerning SG Suisse and Friedli's knowledge of Stanford's underlying wrongdoing. For instance, Plaintiffs allege SG Suisse and Friedli knew that all of Stanford's funds held at SG Suisse were comprised of proceeds from the sale of CDs. FIC ¶ 58. They were thus aware that Stanford was transferring large amounts of CD proceeds to CAS Hewlett, Stanford's fraudulent auditor in the Carribean. *Id.* ¶¶ 62–72. Stanford was also transferring CD proceeds out of his SG Suisse accounts into his own personal bank accounts.

ORDER – PAGE 24

*Id.* ¶ 59. Further, SG Suisse and Friedli were aware that Stanford had long been offering returns on his investments that were too good to be true in the financial world. *Id.* ¶ 74. Plaintiffs allege all this took place despite regulatory warnings concerning the Antiguan finance industry, and SG Suisse's own due diligence into Stanford's operations. *Id.* ¶¶ 73, 75–77.

As to the remaining Bank Defendants, Plaintiffs allege awareness that Stanford's only product was CDs, SIC ¶ 47, and that these products purportedly yielded returns that were too good to be true. *Id.* ¶¶ 65–66. Each of the Bank Defendants received regulatory warnings concerning the Antiguan financial industry and was required to conduct due diligence on Stanford's operations. *Id.* ¶¶ 55–64, 67–69. Reading the complaint in a light most favorable to Plaintiffs, the Court finds these allegations sufficient to raise a reasonable inference of both knowledge of Stanford's underlying wrongdoing and a specific agreement to facilitate Stanford's fraudulent conduct.[14]

**2. Plaintiffs Adequately Plead Substantial Assistance.** – Plaintiffs also allege facts sufficient to satisfy the "substantial assistance" element of an aiding and abetting claim, and the overt act requirement for a civil conspiracy claim. Plaintiffs allege SG Suisse and Friedli facilitated the transfers of bribes to Stanford's auditor in Antigua. FIC ¶¶ 59, 62–72.

---

[14]The scienter element for a civil conspiracy claim in Texas requires specific intent to agree to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996). Importantly, a conspiratorial agreement "may be informal and tacit and . . . a civil conspiracy can be established by circumstantial evidence." *Bradt v. Sebek*, 14 S.W.3d 756, 766 (Tex. App. – Houston [1st Dist.] 2000, pet. denied).

ORDER – PAGE 25

Plaintiffs also allege that the other Bank Defendants held Stanford accounts that were used to purchase and fund a variety of Stanford's investments.  SIC ¶¶ 49–52.  By providing even routine banking services for the Stanford scheme, Defendants inherently facilitated the financial transactions and operations that formed the lifeblood of the Stanford scheme.  The Court finds the provision of these alleged banking services sufficient to allege substantial assistance and an overt act in furtherance of a conspiracy.

*3. The Court Declines to Dismiss for Failure to Plead Proximate Cause* – TD argues Class Plaintiffs' civil conspiracy claims fail because they fail to allege their injuries were proximately caused by TD's alleged conduct.  *See* TD's Mot Dismiss 21.  The Court has previously held that proximate cause is a question of fact inappropriate for resolution on a motion to dismiss.  *See, e.g.*, March 24, 2015 Order 9–10 [126], *in The Official Stanford Investors' Committee v. Breazeale Sachse & Wilson LLP*, Civil Action No. 3:11-CV-0329 (N.D. Tex. filed Feb. 17, 2011).  For the same reasons, the Court declines to dismiss for failure to plead causation here.

*4. Class Plaintiffs State a Claim for Breach of Fiduciary Duty Against SG Suisse and Friedli.* – SG Suisse objects to Plaintiffs' breach of fiduciary duty claim on the grounds that Plaintiffs fail to allege SG Suisse owed a fiduciary duty to Stanford.  However, Plaintiffs allege that SG Suisse and Friedli provided discretionary brokerage services to Stanford and thus had "discretionary investing and fiduciary authority" over Stanford accounts.  FIC ¶ 6; *see id.* ¶¶ 6, 47.  Investment managers with discretionary investment authority owe a fiduciary duty to their clients.  *See In re Rea*, 245 B.R. 77, 88 (N.D. Tex. 2000); *W. Reserve*

ORDER – PAGE 26

*Life Assurance Co. of Oh. v. Graben*, 233 S.W.3d 360, 374 (Tex. App. – Fort Worth 2007, no pet.). Plaintiffs thus adequately plead that as discretionary account managers, SG Suisse and Friedli owed fiduciary duties to Stanford.

Plaintiffs also adequately plead that SG Suisse and Friedli breached these duties. Plaintiffs allege that SG Suisse and Friedli made a series of transfers of CD proceeds to Stanford's personal accounts. FIC ¶¶ 52–62. SG Suisse argues that Plaintiffs fail to plead that SG Suisse was acting in its fiduciary capacity when it arranged for these transfers, *see* SG Suisse's Reply Supp. Mot. Dismiss Intervenor Compl. 18, but the Court finds this to be a question of fact inappropriate for resolution on a motion to dismiss. Plaintiffs have allege SG Suisse and Friedli owed fiduciary duties as discretionary account managers. Whether and when they took on these duties is more appropriately considered on a motion for summary judgment.

## CONCLUSION

The Court dismisses all Class Plaintiffs TUFTA and TUFTA-based claims. The Court dismisses OSIC's Constructive TUFTA claims to the extent they are brought on behalf of the Receiver. The Court dismisses all of OSIC's constructive TUFTA claims brought against Friedli. Defendants' motions to dismiss are denied in all other regards. Because the dismissed claims would face the same obstacles no matter how they are pled, the Court does not grant Plaintiffs leave to replead the dismissed claims.

Signed April 21, 2015.

David C. Godbey
United States District Judge