IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PEGGY ROIF ROTSTAIN, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:09-CV-2384-N |
| | § | |
| TRUSTMARK NATIONAL BANK, *et al.*, | § | |
| | § | |
| Defendants. | § | |

# ORDER

This Order addresses Defendants Trustmark National Bank ("Trustmark") [293], SG Private Banking (Suisse) S.A. ("SG Suisse") [295], Toronto-Dominion Bank and Independent Bank [296] ("TD"), HSBC Bank PLC ("HSBC") [298] (collectively, the "Bank Defendants"), and Blaise Friedli's [299] (collectively, "Defendants") motions to dismiss and the Bank Defendants' motion to reconsider [373]. The Court denies the motions.[1]

## I. THE ORIGIN OF THE DISPUTE

This case arises out of the Ponzi scheme perpetrated by R. Allen Stanford, his associates, and various entities under his control (collectively, "Stanford"). The facts of Stanford's scheme are well-established, *see, e.g., Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 188–89 (5th Cir. 2013), and will not be recounted in great detail here. Essentially, Stanford's scheme involved the sale of fraudulent certificates of deposit

---

[1]To the extent that Defendants' motions incorporate and reassert arguments the Court previously addressed, the Court declines to reconsider its previous orders. *See* [194], [216], [221], and [234].

ORDER – PAGE 1

("CDs") issued by the Antigua-based Stanford International Bank Limited ("SIBL"). Stanford represented to investors that CD proceeds were invested only in low risk, high return funds; in reality, the CD proceeds were used to finance Stanford's own extravagant lifestyle, and to pay off previous investors. The facts supporting the claims in this action are complex. At root, the claims allege that the Defendant financial institutions provided banking services that supported and furthered Stanford's scheme.

In August 2009, a group of Stanford investors seeking to represent a putative class ("Class Plaintiffs") filed their original petition in the 129th District Court for Harris County, Texas. Class Plaintiffs named as Defendants Trustmark, TD, HSBC, and SG Suisse. Class Plaintiffs asserted claims for fraudulent transfers under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com. Code §§ 24.001–24.013, conspiracy to commit fraud, and aiding and abetting fraud. After the Bank Defendants removed the action to federal court, the Judicial Panel for Multi-District Litigation transferred the case to this District as part of the ongoing Stanford Multi-District Litigation proceedings.

After Bank Defendants filed motions to dismiss Class Plaintiffs' claims, the Official Stanford Investors Committee ("OSIC")[2] filed a motion to intervene in the case. The Court granted OSIC's motion to intervene and OSIC filed two intervenor complaints, *see*

---

[2]The Official Stanford Investors Committee is a body tasked with representing Stanford investors and has similar rights and responsibilities as a bankruptcy creditors' committee appointed under Title 11 of the United States Code. *See generally* Order, Aug. 10, 2010 [1149], *in SEC v. Stanford Int'l Bank, Ltd.*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009).

Intervenor Compl., Dec. 14, 2012 [130] (the "First Intervenor Complaint" or "FIC"); Intervenor Compl., Feb. 15, 2013 [133] (the "Second Intervenor Complaint" or "SIC").

In response to OSIC's intervention, Class Plaintiffs moved for leave to amend their petition to include allegations and claims asserted in OSIC's intervenor complaints. The Court granted leave and ordered that "Plaintiffs' Class Complaint shall be considered to incorporate by reference [OSIC's] claims against [SG Suisse and Friedli] . . . and OSIC's claims against [Trustmark, TD, and HSBC] . . . ." Order, Aug. 25, 2014 [212]. Defendants moved to dismiss OSIC's intervenor complaints and the class complaint. The Court partially granted these motions, applying the arguments raised in Defendants' motions to dismiss the intervenor complaints equally to Class Plaintiffs' claims based on the incorporation. *See* Order, Apr. 21, 2015 [234]. Among other claims addressed in that Order, the Court declined to dismiss OSIC's constructive fraudulent transfer claims. *Id.* at 19–20 (holding that OSIC properly pled the absence of reasonably equivalent value in TUFTA claim by alleging transfers from Ponzi scheme).

After partially granting Defendants' motions to dismiss, the Court granted Class Plaintiffs leave to amend their complaint. Order, June 23, 2015 [278]. The Second Amended Class Action Complaint ("SAC") asserts claims against the Bank Defendants and Friedli for (1) aiding, abetting, or participating in a fraudulent scheme; (2) aiding, abetting, or participating in violations of the Texas Securities Act ("TSA"); (3) aiding, abetting, or participating in a breach of fiduciary duty; (4) aiding, abetting, or participating in conversion; and (5) civil conspiracy. *See generally* Second Am. Class Compl. [279]. The Court

previously declined to dismiss the claims for aiding and abetting a fraudulent scheme, aiding and abetting conversion, and civil conspiracy, *See* Order, Apr. 21, 2015 [234], and will not reconsider that ruling.

The instant motions to dismiss argue that Class Plaintiffs' claims for aiding and abetting TSA violations and aiding and abetting a breach of fiduciary duty are new claims that the Court should dismiss under Federal Rule of Civil Procedure 12(b)(6). Friedli also argues that the claims against him are untimely based on insufficient service. Finally, the Bank Defendants' motion to reconsider urges the Court to revisit its prior holding regarding OSIC's constructive fraudulent transfer claims based on purported changes in applicable law.

## II. THE LEGAL STANDARD FOR DISMISSAL

### A. *The Rule 12(b)(6) Standard*

When considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."

*Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (internal citations omitted).

### B. The Rule 9(b) Legal Standard

Rule 9(b) applies to claims brought under Article 33 of the TSA. *See Billitteri v. Sec. America, Inc.*, 2010 WL 6785484, at *4–5 (N.D. Tex. 2010). Thus, the Court applies Rule 9(b) to the averments of fraud supporting Class Plaintiffs' TSA claims. Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). In the Fifth Circuit, a plaintiff must plead the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (alteration in original) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). In effect, Rule 9(b) requires a plaintiff to state "the who, what, when, where, and how" of the alleged fraud. *Id.* at 179. "What constitutes 'particularity' will necessarily differ with the facts of each case." *Id.* (quoting *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992)).

### III. THE COURT DENIES THE MOTIONS TO DISMISS

#### A. *Class Plaintiffs' TSA Claims May Proceed*

The Court declines to dismiss Class Plaintiffs' TSA claims because (1) the TSA claims are timely and (2) the claims are adequately stated under Rule 9(b).

*1. The TSA Claims Are Timely.* – The TSA contains a statute of repose that bars any claim asserted after the statute's deadline expires. *See* TEX. REV. CIV. STAT. art. 581-33H.[3] The deadline for a plaintiff to assert a claim varies based on the nature of the claim. In the SAC, Class Plaintiffs allege that Defendants aided and abetted three TSA violations: (1) the sale of unregistered securities, (2) the sale of securities by unregistered dealers, and (3) the sale of securities through untruth or omission. A plaintiff must bring claims based on sales of unregistered securities or sales by unregistered dealers within three years of the relevant sale. *Id.* art. 581-33H(1)(a). If a claim is based on a sale of securities through untruth or omission, a plaintiff must assert the claim within five years of the relevant sale. *Id.* art. 581-33H(2)(b).

The Court rejects Defendants' argument that the TSA's statute of repose bars the SAC's TSA claims. Defendants' argument rests on the premise that Class Plaintiffs did not previously allege sufficient facts to state their TSA claims before the statutory deadline

---

[3]Courts have consistently characterized article 581-33H of the TSA as a statute of repose, not a statute of limitations. *See, e.g.*, *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 966 F. Supp. 2d 1018, 1023–24 (C.D. Cal. 2013) (citing *Williams v. Khalaf*, 802 S.W.2d 651, 654 n.3 (Tex. 1990)).

expired. Because this premise is faulty, the Court will not dismiss based on the statute of repose.

The statute of repose does not apply because Class Plaintiffs adequately stated their TSA claims in their original complaint. Doing so cut off the statute of repose. The Court has already determined that Class Plaintiffs' original complaint met Rule 9(b)'s burden in pleading a claim for aiding and abetting fraud. Order 24–26, Apr. 21, 2015. The question is thus whether those same factual allegations stated a claim under Rule 9(b) for aiding and abetting a TSA violation.[4] The answer here is yes.

To state a claim for aiding and abetting a TSA violation, a plaintiff must allege "(1) a primary violation of the securities laws, (2) that the alleged aider and abettor ha[d] a general awareness of his role in the violation, (3) that he gave substantial assistance in the violation, and (4) that he intended to deceive the plaintiff or acted with reckless disregard for the truth of the primary violator's misrepresentations." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 344 (5th Cir. 2008). These elements substantially reflect the elements of Class

---

[4]Rule 9(b) requires particularity related only to the factual allegations of the circumstances of the fraud. Nowhere does the rule, or any legal authority provided by the Defendants, require specificity of the claim's legal source, such as a specific statutory provision. Thus, if the original complaint provides adequate notice of the nature and grounds of the claim and particularly states the "who, what, when, where, and how" of the fraud, then the claim may proceed. *See, e.g.*, *Franz v. Iolab, Inc.*, 801 F. Supp. 1537, 1541 (E.D. La. 1992) (allowing fraud claim to proceed despite the word "fraud" not appearing in plaintiff's complaint because "it is not required that the plaintiff specifically allege the legal theory of fraud, only that he 'allege with particularity *the defendant's acts* which the plaintiff contends amount to fraud'") (quoting *Unimobil 84 Inc. v. Spurney*, 797 F.2d 214, 216 (5th Cir. 1986) (emphasis in original)).

Plaintiffs' claims for aiding and abetting fraud. *See, e.g.*, Order 19, March 4, 2015 [176], *in Troice v. Proskauer Rose LLP*, Case No. 3:09-CV-1600-N (N.D. Tex., filed Aug. 27, 2009) ("In general, aiding and abetting liability requires (1) the commission of a tort by a primary violator; (2) knowledge of this tort on the part of the aider and abettor; and (3) substantial assistance by the aider and abetter in the achievement of the primary violation.").[5]

The Original Complaint's factual allegations, which were sufficient to state a claim for aiding and abetting fraud, were sufficient to state a TSA claim as well.[6]  Both claims require an underlying primary violation, scienter, and substantial assistance from the defendant.  The primary violation underlying the Original Complaint's common law aiding and abetting claim – Stanford's fraudulent sale of certificates of deposit – is sufficient to also allege a primary violation under the TSA.  The Court additionally concludes that the original complaint's factual allegations that supported the scienter and substantial assistance

---

[5]The "general awareness" element and the "intent to deceive" element can be viewed as two halves of a single scienter requirement.  Order 15 n.5, Mar. 4, 2015 [176], *in Troice v. Proskauer Rose*, Case No. 3:09-CV-1600-N (N.D. Tex., filed Aug. 27, 2009) (citing *Sterling Trust Co. v. Adderley*, 168 S.W.3d 835, 842 (Tex. 2005)).  The Court considers them together here.

[6]In a different Stanford case, the Court dismissed aiding and abetting claims under the TSA's statute of repose.  *See* Order 10–12, Feb. 4, 2015 [123], *in OSIC v. Greenberg Traurig, LLP*, Case No. 3:12-CV-4641-N (N.D. Tex., filed Nov. 15, 2012).  In that case, the Court concluded that plaintiffs' prior assertion of a claim for civil conspiracy to violate the TSA did not preserve their right to bring other TSA claims in an amended complaint outside of the time set by the statute of repose.  *Id.*  The difference is that the elements necessary to establish a civil conspiracy claim differ materially from the elements of a TSA violation; such is not the case with the facts and claims involved here.

requirements for common law aiding and abetting are likewise sufficient to support those elements of a TSA claim. *See* Order 24–25, Apr. 21, 2015.

Taken together, these conclusions support the argument that Class Plaintiffs stated their TSA claims in time by alleging enough specific facts under Rule 9(b) to give Defendants adequate notice of the claims against them under Rule 8. *See* 5A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1298 (collecting cases supporting the proposition that Rule 8 and Rule 9(b) "must be read in conjunction with each other"). The fact that Class Plaintiffs subsequently amended their complaint to state their claims with greater specificity, additional factual support, or to state that the previously-alleged facts supported liability under a new legal theory does not violate the already-satisfied statutory deadline. Accordingly, the Court will not dismiss Class Plaintiffs' claims on this basis.

The TSA also contains a three-year statute of limitations. *See* TEX. REV. CIV. STAT. art. 581:33(H)(2). But that statute of limitations is subject to tolling by the discovery rule. *Id.* The discovery rule applies in the context of the Stanford fraud. *See, e.g.*, *Democratic Senatorial Campaign Comm.*, 712 F.3d at 197–98. Because the discovery rule tolled the statute of limitations until February 2009 at the earliest, the Court will not dismiss based on limitations under the procedural time line discussed above.

**2. The TSA Claims Are Adequately Stated Under Rule 9(b).** – Class Plaintiffs' allegations are sufficient to raise a reasonable inference that Defendants "[knew] of Stanford's underlying wrongdoing" and provided substantial assistance in effecting

Stanford's conduct. *See* Order 25, Apr. 21, 2015 [234]. For the same reasons the fraud claims at issue in the previous order were sufficiently pled, the TSA claims at issue here may proceed.

The Court thus declines to dismiss Class Plaintiffs' TSA claims to the extent that they (1) relate to sales by omission or misrepresentation taking place within the five years preceding August 23, 2009, or (2) relate to sales of unregistered securities or sales of securities by unregistered dealers taking place within the three years preceding August 23, 2009.

### B. Class Plaintiffs' Breach of Fiduciary Duty Claims May Proceed

As a threshold matter, the Court will not dismiss Class Plaintiffs' aiding and abetting a breach of fiduciary duty claim based on the argument that Texas does not recognize such a cause of action. *See* Order 19, Dec. 17, 2014 [114], *in OSIC v. Greenberg Traurig, LLP*, Case No. 3:12-CV-4641-N (N.D. Tex., filed Nov. 15, 2012) (noting dissonance in Texas cases and allowing aiding and abetting breach of fiduciary duty claims to proceed).

Nor will the Court dismiss Class Plaintiffs' aiding and abetting claims on the ground of untimeliness. Breach of fiduciary duty claims carry a four-year statute of limitations, *see* TEX. CIV. PRAC. & REM. CODE § 16.004, but the discovery rule can toll the limitations period. *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 888 (Tex. 1998). Stanford's fraud was not discoverable until, at the earliest, February 2009. *Democratic Senatorial Campaign Comm.*, 712 F.3d at 197–98. Class Plaintiffs filed their original complaint on August 23, 2009.

Again, the question is whether the facts alleged in the original complaint adequately stated a claim for aiding and abetting breach of fiduciary duty. Again, the answer is "yes."

To state a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must allege "(1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary relationship." *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007) (citing *Cox Tex. Newspapers, L.P. v. Wootten*, 59 S.W.3d 717, 721–22 (Tex. App. – Austin 2001, pet. denied)).

The original complaint adequately pled the existence of a fiduciary duty by alleging that R. Allen Stanford was the Chairman of SIBL and by alleging facts about the relationship between Stanford's brokers and customers. The original complaint adequately alleged that the Bank Defendants, by virtue of their sophistication in the industry and specific experience with Stanford, knew of the fiduciary relationships between Stanford and his entities and the entities and customers. Finally, as the Court has previously held, the original complaint adequately alleges that the Bank Defendants' conduct constitutes knowing participation in the breach of those fiduciary duties. Thus, the original complaint stated facts that support the reasonable inference that Defendants aided and abetted a breach of fiduciary duty. Because the SAC's breach of fiduciary duty claims are based on conduct attempted to be set out in the original complaint, the claims relate back to the original complaint for limitations purposes. *See* FED. R. CIV. P. 15(c)(1)(b).

Finally, the SAC adequately pleads a claim for aiding and abetting a breach of fiduciary duty. The additional facts alleged in the SAC do not negate the sufficiency of the facts alleged in the original complaint. The Court will not dismiss on this basis.

### C. The Court Declines to Dismiss Class Plaintiffs' Claims Against Friedli

Friedli not only joins in the Bank Defendants' motions to dismiss, but also asserts three independent arguments supporting dismissal of Class Plaintiffs' claims. Friedli argues that (1) the court lacks personal jurisdiction over him, and (2) service of process was inadequate, and (3) the statute of limitations expired. Finding these arguments unavailing, the Court permits Class Plaintiffs' claims against Friedli to proceed.

The Court previously held that Friedli has enough minimum contacts with Texas and that the exercise of jurisdiction over Friedli would comport with fair play and substantial justice. *See* Order, June 5, 2014 [194]; Order, Sept. 8, 2014 [216]; Order, Apr. 21, 2015 [234]. It will not reverse itself based on Friedli's present arguments.

Friedli argues next that Class Plaintiffs never properly served him with process, thus mandating dismissal under Rule 12(b)(5) and applicable limitation statutes. Friedli, who lives in Switzerland, is a foreign defendant. Rule 4(f) governs the proper procedure for serving foreign defendants. FED. R. CIV. P. 4(f). In the Fifth Circuit, the usual 120-day rule for service of domestic defendants does not apply to service of foreign defendants. *See* FED. R. CIV. P. 4(m); *Lozano v. Bosdet*, 693 F.3d 485, 488 (5th Cir. 2012). But plaintiffs do not have unlimited time to serve a foreign defendant; instead, the Court applies a "flexible due diligence' standard to determine whether the delays should be excused." *Id.* at 488–89

(quotation marks and citation removed). Where, as here, "'the applicable statute of limitations likely bars future litigation,'" any dismissal is considered a dismissal with prejudice and should be granted only where there is a "clear record of delay or contumacious conduct by the plaintiff." *Id.* at 489–90 (quoting *Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 326 (5th Cir. 2008)). Thus, dismissal based on failure to serve a foreign defendant is only appropriate "when the delay: (1) was caused by the plaintiff himself, as opposed to by counsel; (2) resulted in actual prejudice to the defendants; or (3) was caused by intentional conduct." *Id* at 490 (citing *Millan*, 546 F.3d at 326). "'[I]t is not a party's negligence . . . that makes conduct contumacious; instead, it is the stubborn resistance to authority which justifies dismissal with prejudice.'" *Id.*

No record of such conduct or prejudice exists here. Friedli argues that he was never served with any version of Class Plaintiffs' complaint and that he never waived service by making a general appearance. *See* Mot. to Dismiss 15–17 [299]; Reply 3–7 [314]. Even taken as true, this argument is insufficient. Though Friedli asserts that there was a delay, he provides no basis to conclude that Class Plaintiffs – as opposed to their counsel – caused the delay, or that the delay was a result of intentional conduct or misconduct. Nor does Friedli describe any actual prejudice that he will suffer if the Court allows late service; to the contrary, Friedli has long had actual knowledge of this lawsuit. Absent such a record, the Court will not impose the severe sanction of dismissal with prejudice on the basis of a failure to timely serve a foreign defendant in a case with such an extensive and complex history.

However, even though the Fifth Circuit has "counseled flexibility in determining whether a plaintiff has timely served a foreign defendant, [it has] by no means dispensed with the requirement." *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 423 (5th Cir. 2014). Class Plaintiffs do not provide any authority supporting the concept that service of an intervenor's complaint is an adequate substitute for service with Class Plaintiffs' complaint. OSIC managed to serve Friedli with their intervenor complaints; the Court now orders Class Plaintiffs to serve their complaint on Friedli within 60 days of the date this Order is signed, or move for an extension of time.

Finally, Friedli's statute of limitations argument fails. The claims against Friedli found in OSIC's complaints were incorporated into Class Plaintiffs' complaint as of December 14, 2012. This date is within the applicable limitations periods discussed above based on the application of the discovery rule. The Court denies Friedli's motion to dismiss.

### IV. THE COURT DENIES THE MOTION TO RECONSIDER

The Court will not reconsider its previous denial of the Bank Defendants' motion to dismiss OSIC's constructive fraudulent transfer claims. Although Rule 54(b) empowers the Court to reconsider interlocutory orders before the case reaches judgment, FED. R. CIV. P. 54(b), "whether to grant such a motion rests within the discretion of the court." *Dos Santos v. Bell Helicopter Textron Inc. Dist.*, 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009). Some courts conducting the Rule 54(b) analysis apply the same factors used to determine whether to alter a judgment under Rule 59. *See eTool Dev., Inc. v. Nat'l Semiconductor Corp.*, 881 F. Supp. 2d 745, 749–50 (E.D. Tex. 2012) (applying to Rule 54(b) the factors set forth in *In*

re Benjamin Moore & Co., 318 F.3d 626, 629 (5th Cir. 2002), that require a showing of "(1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice"). However, "when a district court rules on an interlocutory order, it is 'free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 210–11 (5th Cir. 2010) (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1994) (*abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994) (en banc))).

In this case, the Bank Defendants argue that there has been an intervening change in controlling law that justifies a different outcome. Defs.' Mot. Reconsider 5–8 [373]. The Bank Defendants argue that the Texas Supreme Court's recent decision in *Janvey v. Golf Channel, Inc.*, 2016 WL 1268188 (Tex. 2016) ("*Golf Channel*"), changes the standard required for pleading a constructive fraudulent transfer claim under TUFTA. While *Golf Channel* clarified the type of evidence that can satisfy TUFTA's reasonably equivalent value standard for affirmative defense purposes, *see Golf Channel*, 2016 WL 1268188, at *34, the Court does not find support for the conclusion that by this clarification the Texas Supreme Court intended to impose any new pleading burden for constructive fraudulent transfer claims. The fact that proof of the *Golf Channel* elements is sufficient to establish a prong of the affirmative defense does not mean that plaintiffs must necessarily plead facts negating those elements to state a claim for relief. *See, e.g.*, Order 4, May 31, 2016 [21], *in Sanford*

*v. Pershing*, 3:15-CV-3832-N (N.D. Tex., filed Dec. 1, 2015) (holding that plaintiffs need not plead around affirmative defenses to avoid dismissal under Rule 12(b)(6)). To require plaintiffs to plead the absence of the *Golf Channel* affirmative defense elements as an essential element of a different claim would be to exceed the language of both TUFTA and the Texas Supreme Court. Thus, the Court will not reconsider its previous ruling finding OSIC's constructive fraudulent transfer claims adequately pled.

## CONCLUSION

The Court denies the Bank Defendants' motions to dismiss and motion to reconsider, and denies Friedli's motion to dismiss. The Court orders Class Plaintiffs to serve Friedli within 60 days of the date this Order is signed, or move for an extension of time.

Signed July 27, 2016.

_____
David C. Godbey
United States District Judge