IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| PEGGY ROIF ROTSTAIN, *et al.*, § § Plaintiffs, § § v. § § TRUSTMARK NATIONAL BANK, *et al.*, § § Defendants. § | Civil Action No. 3:09-CV-2384-N-BQ |

## MEMORANDUM OPINION AND ORDER

This Order addresses the Official Stanford Investors Committee's ("OSIC") motion for partial summary judgment against Defendant Société Générale Private Banking (Suisse) S.A. ("SG Suisse") [358]. Because the Court finds that genuine issues of material fact exist as to OSIC's claim, the Court denies the motion.

## I. ORIGINS OF THE DISPUTE

This dispute arises out of a multi-billion dollar Ponzi scheme perpetrated by R. Allen Stanford. Upon discovering the scheme, the Securities and Exchange Commission (the "SEC") pursued a securities fraud action against R. Allen Stanford, his associates, and various entities under his control. As part of that litigation, the Court appointed a receiver (the "Receiver") and authorized him to commence any actions necessary to recover assets of the Receivership Estate. *See* Second Am. Order Appointing Receiver (the "Receivership Order") [1130], *SEC v. Stanford Int'l Bank Ltd.*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009). In August 2010, the Court also authorized and approved the formation of OSIC. *See* Order (the "OSIC Order") [1149], *SEC v. Stanford Int'l Bank Ltd.*,

MEMORANDUM OPINION AND ORDER – PAGE 1

Civil Action No. 3:09-CV-0298-N. The Court designated OSIC to represent the interests of Stanford International Bank, Ltd. ("SIB") investors and to take legal actions for the benefit of SIB investors and on behalf of the Receiver and the Receivership Estate. *See id.* OSIC and the Receiver subsequently entered into an agreement (the "Agreement") regarding the prosecution of claims against third parties, including claims under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), and the Court approved the Agreement on February 25, 2011. *See* Order (the "OSIC Order") [1267], *SEC v. Stanford Int'l Bank Ltd.*, Civil Action No. 3:09-CV-0298-N.

Pursuant to its authority under the OSIC Order and the Agreement, and as attorney-in-fact and assignee of the Receiver's claims against SG Suisse, OSIC filed an Intervenor Complaint against SG Suisse on December 14, 2012 [130]. OSIC alleges multiple claims against SG Suisse, including avoidance and recovery of a $95 million transfer from Stanford Financial Group Ltd. ("SFGL") to SG Suisse. *See* Intervenor Complaint [130]. OSIC argues that this $95 million transfer to SG Suisse was a fraudulent transfer under TUFTA. *Id.* at 31–33. OSIC contends that Stanford took out a $95 million personal loan from SG Suisse and in 2008, SFGL used customer funds to repay SG Suisse for Stanford's personal loan. The Official Stanford Investors Committee's Mot. Partial Summ. J. and Br. Supp. ("OSIC's Mot.") 1 [359]. OSIC now asks the Court to grant partial summary judgment in its favor on the basis that there is no genuine issue of material fact that this $95 million transfer was fraudulent under TUFTA.

## II. SUMMARY JUDGMENT STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the Court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, she "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [her] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment by either (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in her favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, a nonmovant does not satisfy her burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated

assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (internal quotations and citations omitted). Indeed, factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. THE COURT DENIES OSIC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

OSIC moves for summary judgment on a single fraudulent transaction: a $95 million transfer from SFGL to SG Suisse in December 2008. OSIC's Mot. 2. OSIC alleges that because the Stanford entities, which include SFGL, "were operated as a Ponzi scheme, the Transfer from SFGL to SG Suisse was made with fraudulent intent as a matter of law" and that "SG Suisse failed to provide any value, let alone reasonably equivalent value to SFGL in exchange for the Transfer." *Id.* However, the Court determines that summary judgment is not appropriate because genuine issues of material fact exist regarding whether SG Suisse took the transfer in good faith and for reasonably equivalent value.

#### A. *Fraudulent Transfer Under TUFTA*

TUFTA operates to void certain fraudulent "transfers," which the statute defines as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." TEX. BUS. & COM. CODE § 24.002(12). Specifically, a transfer is fraudulent when "the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay, or defraud any

MEMORANDUM OPINION AND ORDER – PAGE 4

creditor of the debtor." *Id.* § 24.005(a)(1). In the Fifth Circuit, OSIC may establish actual intent to defraud by showing that the Stanford enterprise operated as a Ponzi scheme. *Janvey v. Alguire*, 647 F.3d 585, 598 (5th Cir. 2011); *see also Janvey v. Brown*, 767 F.3d 430, 439 (5th Cir. 2014).

Once the transfer and the fraudulent intent are established, the burden shifts to the transferee to establish a defense under TUFTA. *See Hahn v. Love*, 321 S.W.3d 517, 526 n.9 (Tex. App. – Houston [1st Dist.], pet. denied). TUFTA includes an affirmative defense for transferees "who took [the transfer] in good faith and for a reasonably equivalent value." TEX. BUS. & COM. CODE § 24.009(a); *First Nat'l Bank of Seminole v. Hooper*, 104 S.W.3d 83, 85 (Tex. 2003). In order to determine whether a defendant took a transfer in good faith, the Court should conduct an objective analysis as to whether the defendant knew or had reason to know of the fraudulent scheme. *GE Capital Commercial, Inc. v. Worthington Nat'l Bank*, 754 F.3d 297, 311–12 (5th Cir. 2014); *see also Hahn*, 321 S.W.3d at 526 n.9.

A defendant receives a transfer for reasonably equivalent value when the defendant provides evidence that the "transferee (1) fully performed under a lawful, arm's-length contract for fair market value, (2) provided consideration that had objective value at the time of the transaction, and (3) made the exchange in the ordinary course of the transferee's business." *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 564 (Tex. 2016). The Texas Supreme Court ruled that courts should make the same "value" and "reasonably equivalent value" determinations regardless of whether the entities were engaged in a Ponzi scheme. *Id.* at 581. "In fact, if a reasonable equivalent has been given in good faith for a transfer

MEMORANDUM OPINION AND ORDER – PAGE 5

or obligation the transferee has a complete defense although the debtor is shown to have intended to hinder, delay, or defraud creditors." *Id.* at 573 (emphasis omitted) (internal quotations and citations omitted). Value exists if a debtor took consideration that had objective value, even if the consideration did not preserve the debtor's estate. *Id.* at 577.

### B. The Court Determines Fact Issues Exist Regarding OSIC's TUFTA Claim

Assuming without deciding that OSIC established its TUFTA claim, the Court determines that SG Suisse raised fact issues regarding its affirmative defense. First, the Court holds that a fact issue exists regarding whether SG Suisse knew or should have known the of the Ponzi scheme or the allegedly fraudulent nature of the transaction. SG Suisse argues that evidence shows that most involved, including SG Suisse, did not know of the ongoing Ponzi scheme until the SEC action began. *See* Société Générale Private Banking (Suisse) S.A.'s Am. Suppl. Resp. Br. Supp. Its Resp. Intervenor-Pl.'s Mot. Partial Summ. J. ("SG Suisse's Am. Resp.") 35–36 [457]. The Court determines that SG Suisse created a genuine issue of material fact as to whether SG Suisse executed the transaction in good faith.

Next, the Court determines that SG Suisse presented fact issues regarding whether it received the transaction for reasonably equivalent value. OSIC argues that SG Suisse loaned Stanford $95 million, and later Stanford ordered SFGL to pay back his loan using CD customers' funds. OSIC's Mot. 1–2, 13–14. Specifically, OSIC contends that Stanford personally secured the loan in 2004, but in 2007, SFGL pledged CD proceeds to guarantee Stanford's personal loan. *Id.* at 7–8. OSIC states that in 2008, SFGL transferred $95 million from SFGL to SG Suisse to benefit Stanford, but SFGL did not receive an exchange

of reasonably equivalent value. *Id.* at 14. As OSIC states, "the only person who received value in this transaction was Allen Stanford." *Id.* at 15.

But SG Suisse contends that it held a valid lien on the funds in the SFGL account until the lien was extinguished by repayment of the loan in 2008. SG Suisse's Am. Resp. 37. SG Suisse asserts that "[i]n the 2004 transaction, SG Suisse released $95 million in exchange for an equivalent security interest in the [SFGL account]." *Id.* Under SG Suisse's construction of the facts, the SFGL account was encumbered by a valid lien, regardless of Stanford's later 2007 pledge. *Id.* at 29. Because of the valid lien, SG Suisse was merely made whole by the loan repayment. *Id.* at 1–2.

Here, the Court determines that the relationship between the 2004 and 2007 pledges creates a fact issue. SG Suisse presented evidence that the SFGL account could have been encumbered by the 2004 pledge, which indicates that the 2008 transfer could have been a dollar-for-dollar exchange for the defined value equal to the loan. *Id.* at 38. The Court determines that genuine issues of material fact exists as to whether: (1) the loan was a lawful transaction for fair market value; (2) SG Suisse provided economic consideration for the pledge and loan repayment; and (3) the loan was an exchange in the ordinary course of business. *Id.* at 36–40. Without more evidence regarding the specificity of these pledges and their implications on the loan repayment, the Court holds that fact issues exist as to whether the loan repayment was an objectively valuable, arm's-length transaction at market-value rates. Thus, the Court determines that SG Suisse created a fact issue regarding whether SG Suisse provided reasonably equivalent value in exchange for the transaction. *See id.* at 6–10; *Golf Channel, Inc.*, 487 S.W.3d at 577; *see also Brown*, 767

MEMORANDUM OPINION AND ORDER – PAGE 7

F.3d at 443 ("[P]rincipal payments made to the investor-defendants are not subject to TUFTA claims. Unlike interest payments, it is undisputed that the principal payments were payments of an antecedent debt . . . .").

Further, the Court holds that fact issues exist regarding the source of the funds in the SFGL account. OSIC argues that the loan proceeds were never deposited in the SFGL account and that the SFGL account consisted of CD investor funds. OSIC's Mot 2, 7. But SG Suisse presents evidence that this account also included transactions that were not linked to CD proceeds, like a $60 million deposit and other unaccounted for interest. SG Suisse's Am. Resp. 20. The Court holds that this evidence establishes a fact issue regarding the source of funds in the SFGL account and the value that SFGL ultimately received.

## CONCLUSION

The Court determines that genuine issues of material fact exist regarding whether SG Suisse received the transfer in good faith and for reasonably equivalent value. Accordingly, the Court denies OSIC's motion for partial summary judgment.

Signed March 30, 2020.

_____<br>
David C. Godbey<br>
United States District Judge

MEMORANDUM OPINION AND ORDER – PAGE 8