IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PEGGY ROIF ROTSTAIN, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:09-CV-2384-N-BQ |
| | § | |
| TRUSTMARK NATIONAL BANK, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND
## ORDER DENYING DEFENDANTS' MOTION TO COMPEL

This discovery dispute requires the Court to consider certain requests for production
(RFPs) Defendants The Toronto-Dominion Bank (TD Bank), Independent Bank, successor by
merger to Bank of Houston, and Trustmark Bank (collectively, Moving Defendants) served
January 18, 2018, on Plaintiff The Official Stanford Investors Committee (OSIC) and April 3,
2019, on OSIC's Chairperson John J. Little, Esq.  After several attempts by the parties to resolve
the issue, Moving Defendants filed the Motion to Compel now before the Court (ECF No. 786),
to which OSIC has filed a response.  ECF No. 788.  Having considered the relevant filings and
applicable law, the Court **DENIES** Moving Defendants' motion for the reasons set forth below.

## I.    Background

On January 18, 2018, Moving Defendants served on OSIC their First Set of Requests for
Production of Documents (First RFPs).  Defs.' App. 5–34, ECF No. 786-1.  OSIC objected to the
First RFPs on numerous grounds (*see id.* at 36–75) but also "produced a substantial number of
[responsive] documents."  Moving Defendants' Mot. to Compel 2, ECF No. 786 [hereinafter
Defs.' Mot.].  On April 23, 2019, TD Bank served a subpoena on Mr. John Little in his capacity
as Examiner in the Stanford cases.  Defs.' App. 77–98.  The subpoena included seven RFPs (April

RFPs), to which Mr. Little objected on various grounds. *Id.* at 100–15. Mr. Little apparently did not produce any responsive documents. *See* Defs.' Mot. 3.

Moving Defendants assert that in approximately July 2019, they "learned about certain communications between Mr. Little" and Stanford International Bank Ltd. (SIBL) certificates of deposit (CD) investors (collectively, CD Investors). *See id.* Moving Defendants' claim that "TD Bank endeavored," beginning at an undisclosed time, "to gain access to" a public Stanford victims' forum to further "review Mr. Little's communications with CD Investors." *Id.* at 4. In April 2020, TD Bank was apparently granted access to the forum. *Id.* Through its review of the forum, "TD Bank [allegedly] discovered additional posts containing communications between Mr. Little (and counsel for OSIC) and CD Investors." *Id.*

On March 2, 2020, Defendants[1] served on Mr. Little a Notice of Issuance of Subpoena for Deposition Testimony. Defs.' App. 140–48. The deposition was originally scheduled to take place March 17 and 18, 2020, but due to the COVID-19 pandemic, Defendants rescheduled it for July 14 and 15, 2020. Defs.' Mot. 4. Moving Defendants assert that during this deposition they learned "that for a certain period of time [Mr. Little] communicated with CD Investors 'all the time.'" *Id.* They also claim that "Mr. Little's deposition . . . shed light on the [OSIC meeting] Agendas" they seek through their motion. *Id.* at 5.

After making several attempts to resolve disputes over OSIC's refusal to produce certain documents purportedly covered by these RFPs, Moving Defendants filed the instant Motion to Compel on September 22, 2020. ECF No. 786. Moving Defendants ask the Court to direct OSIC "to produce: (1) all communications between the Examiner and Chairperson of OSIC, John Little,

---

[1] Moving Defendants, along with HSBC Bank PLC, Société Générale Private Banking (Suisse) S.A., and Blaise Friedli, are referred to herein as "Defendants."

and investors in Certificates of Deposit issued by Stanford International Bank, Ltd. ('CD Investors'); and (2) the agendas prepared by OSIC for its meetings." Defs.' Mot. 1.

Moving Defendants contend that the CD Investors' communications are responsive to First RFP number 33, which seeks "[a]ll Documents and Communications, without regard to their date, Relating to the investors in SIBL CDs on behalf of whom [OSIC] purport[s] to prosecute the Action against and seek recovery from Defendants . . . ." Defs.' App. 24, 65. The request provides a non-exhaustive list of examples of documents that Defendants' seek:

> (i) the domicile of each such investor when he or she purchased one or more SIBL CDs; (ii) whether each investor currently resides in the United States, Canada, the United Kingdom, Switzerland, or elsewhere; (iii) the amount each such investor paid to purchase one or more SIBL CDs; (iv) the date on which each such investor purchased one or more SIBL CDs; (v) the identity of the Person or Persons who sold one or more SIBL CDs to each such investor and directly communicated with each such investor during the sales process; (vi) the nature and substance of the information and/or representations on which each such investor relied in deciding to purchase one or more SIBL CDs, including, without limitation, information and/or representations Relating to the SIBL CDs, Robert Allen Stanford, Stanford International Bank, Ltd., any other Stanford-Owned Entity, and/or any Defendant; and (vii) whether each such investor purchased one or more SIBL CDs by depositing funds in a bank account at one of the Banks.

*Id.* at 24. Moving Defendants also assert that the communications relate to April RFP number 7, which requests the following:

> All Documents and Communications between [Mr. Little] and/or [his] counsel and any Stanford Investor Relating to any of the Defendants, including, but not limited to, [Mr. Little's] correspondence 'with a Stanford CD Investor concerning questions raised by such investor regarding the claims against TD Bank,' as referenced in [Mr. Little's] motion for approval of [his] twenty-ninth application for payment of attorneys' fees, filed in *Securities and Exchange Commission v. Stanford International Bank Limited, Ltd., et al.*, No. 09-cv-00298, on October 22, 2018 (Dkt. No. 2794).

*Id.* at 92. The request defines a "Stanford Investor" as "any Person who invested in SIBL CDs."

*Id.* at 86.

Moving Defendants maintain that the CD Investors' communications "are highly relevant to whether OSIC has standing to sue Defendants directly on behalf of investors—for example, with respect to OISC's [sic] Texas Security Act claims" and in regard to forthcoming summary judgment motions. Defs.' Mot. 8, 10. They also state that: responsive documents will likely lead to the discovery of admissible evidence (*id.* at 9); producing the communications would not be unduly burdensome, particularly using electronic searching (*id.* at 10); and, production of the communications is proportional to the needs of the case. *Id.* With respect to the admissibility of Mr. Little's communications with the CD Investors, Moving Defendants claim that the communications constitute admissions by a party opponent under Federal Rule of Evidence (FRE) 801, as well as lay witness opinion evidence under FRE 701, in regard to the question of standing. *Id.* at 9.

Finally, Moving Defendants argue that despite OSIC's contention to the contrary, the CD Investors' communications are not privileged. *Id.* at 10–11. Moving Defendants note that "Mr. Little . . . does not serve as counsel for the CD Investors and does not have an attorney-client relationship with them." *Id.* at 11.

Regarding the OSIC agendas, Moving Defendants assert that such documents are responsive to First RFP numbers 36 and 28. RFP number 36 asks for:

> All Documents and Communications, without regard to their date, Relating to [OSIC's] decision to intervene in the [*Rotstain*] Action and assert claims against Defendants, including, but not limited to, Documents and Communications Relating to any investigation by the Receiver and/or OSIC between February 17, 2009 and December 5, 2011 Relating to the banking relationships between each Defendant and any Stanford-Owned Entity or Entities and/or the conduct of any Defendant upon which Your claims in the Action are based.

Defs.' App. 25, 32–33. RFP number 28 seeks "[a]ll Documents and Communications, without regard to their date, Relating to all assignments between the Receiver and OSIC, including, but not limited to, copies of all such assignments between the Receiver and OSIC." *Id.* at 23, 26–27.

Moving Defendants contend that the agendas, like the CD Investors' communications, are "highly relevant" because they "bear on OSIC's standing and on the assignment agreements between the Receiver and OSIC." Defs.' Mot. 13. In addition, Moving Defendants believe that production of the agendas would not be unduly burdensome because "Mr. Little . . . is the 'keeper of the agendas' . . . and . . . there are just over 40 documents in total." *Id.* at 14. Lastly, Moving Defendants claim that the agendas are not subject to the attorney-client privilege and, in any event, OSIC has failed to support its assertion with a privilege log. *Id.* at 14–15.

OSIC argues in response that Moving Defendants' request that the Court direct OSIC to provide "all communications" between Mr. Little and the CD Investors is not covered by the scope of First RFP number 33 and April RFP number 7. Pl.'s Resp. 8, ECF No. 788. That is, OSIC alleges Moving Defendants seek documents through their motion that are beyond a reasonable construction of the specific RFPs at issue. *See id.* at 7–9. More fundamentally, OSIC also maintains that the relevant RFPs, as written, are overly broad. *Id.* at 7–8.

Citing Mr. Little's declaration (included in its appendix), OSIC also contends that Moving Defendants' requests for production are unduly burdensome. *Id.* at 11; *see* Pl.'s App. 113–22, ECF No. 788-1. OSIC avers that despite Moving Defendants' argument to the contrary, electronic searching would not lessen the undue burden upon Mr. Little of searching "more than 80,000 e-mail communications . . . to identify those to or from a SIBL CD investor (as opposed to some other type of Stanford investor)." Pl.'s Resp. 11. "Thus, the effort required to collect, review, and collate these materials for production would be onerous, especially when those costs are weighed,

as required, against the lack of any benefit to Defendants." *Id.* Moreover, OSIC disputes Moving

Defendants' assertion that Mr. Little's communications with the CD Investors constitute

admissions by a party opponent or admissible lay witness opinion testimony. *Id.* at 10–11.

Regarding the OSIC meeting agendas, OSIC argues they "are irrelevant to any issue in this

litigation"; they are not responsive to the RFPs cited by Moving Defendants; and the contents are

privileged. *Id.* at 11. OSIC asserts that because "the timeliness or effectiveness of OSIC's

intervention" is not at issue, "the timing of any discussion about that intervention or assignment is

irrelevant." *Id.* at 12. Moreover, OSIC maintains that "Moving Defendants failed to request

production of the OSIC agendas in a timely request for production." *Id.* According to OSIC,

because the relevant RFPs do not reference "agendas" or "meetings," the requests should not be

read to encompass such documents. *Id.*

Finally, OSIC contends that the agendas contain privileged attorney-client communication

and attorney work product. *Id.* at 13. OSIC states that Mr. Little drafted the agendas based on

"past discussions with OSIC members (including counsel) and drafted them in order to frame the

discussion (including legal advice relative to the many actions OSIC pursued and work product

related to pending litigation) expected to occur at the meeting in question." *Id.* OSIC concedes

that it has not provided a privilege log regarding the agendas. *See id.* at 15. It asserts, however,

that this is because "the agendas are not responsive to any request for production" and, "[a]s long

as OSIC's overbreadth objections remain pending, OSIC is not required to include its meeting

agendas on any privilege log . . . ." *Id.* Should the Court order OSIC to produce the agendas, it

states that it "will redact any privileged matters and provide a privilege log as appropriate." *Id.*

## II.   **Discussion**

### A.  **Legal Standard.**

Rule 26 of the Federal Rules of Civil Procedure defines the permissible bounds of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Information must therefore be nonprivileged, relevant, and proportional to the needs of the case to constitute discoverable material. *See Samsung Elecs. Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017) (citing *Rocha v. S.P. Richards Co.*, Civil Action No. 5:16-CV-411-XR, 2016 WL 6876576, at *1 (W.D. Tex. Nov. 17, 2016)) ("Under Rule 26(b)(1), discoverable matter must be both relevant and proportional to the needs of the case—which are related but distinct requirements.").

Federal Rule of Civil Procedure 37(a) governs motions to compel discovery responses. Rule 37(a)(3)(B) provides that a party seeking discovery may move for an order compelling production against another party when the latter has failed to answer interrogatories under Federal Rule of Civil Procedure 33 or produce documents requested under Rule 34. *See* Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv). For purposes of Rule 37(a), "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). "The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." *Abraham v. Alpha Chi Omega*, 271 F.R.D. 556, 559 (N.D. Tex. 2010) (citing *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006)). Once a moving party makes an initial showing of relevance,

7

however, the party resisting discovery has the burden of showing why the requested discovery is irrelevant, overly broad, unduly burdensome, or privileged. *Id.* (citing *Spiegelberg Mfg., Inc. v. Hancock*, No. 3-07-CV-1314-G, 2007 WL 4258246, at *1 (N.D. Tex. Dec. 3, 2007)); *see also Clockwork IP LLC v. Parr Mgmt. LLC*, Civil Action No. 3:14-CV-03879-N, 2016 WL 3350703, at *3 (N.D. Tex. Mar. 21, 2016).

### B. Moving Defendants have not met their initial burden of establishing that the CD Investors' communications and OSIC agendas are relevant to the issue of standing.

In Moving Defendants' view, the communications between Mr. Little and the CD Investors "are highly relevant to whether OSIC has standing to sue Defendants directly on behalf of investors." Defs.' Mot. 8; *see also id.* at 10 (claiming that the CD Investors' communications "are also highly salient for Defendants' upcoming summary judgment motions on issues of standing and the validity of the claims"). Similarly, Moving Defendants assert that the agendas "undoubtedly provide additional context regarding OSIC's ability to function as a Plaintiff-Intervenor in this case and the assignments between the Receiver and OSIC." *Id.* at 13. Moving Defendants, however, provide no facts or argument, beyond these generalized notions of relevance, demonstrating that the documents and communications make a consequential fact more or less probable (*see* Fed. R. Evid. 401) in relation to OSIC's standing to sue Defendants on behalf of the SIBL CD investors. Such non-specific assertions are insufficient to carry their burden herein.

This Court has already found that OSIC has standing to pursue claims on behalf of investors swindled by Stanford. In *Janvey v. IMG Worldwide, Inc.*, United States District Judge David C. Godbey likened OSIC to an unincorporated association and rejected challenges to its standing, reasoning that "OSIC has standing in its own right as representative of an association of Stanford investors." *See* Civil Action No. 3:11-CV-117-N, 2012 WL 13198118, at *2 (N.D. Tex. Sept. 24,

2012).  In *IMG Worldwide*, the Court set forth the elements an unincorporated association must prove to show standing:

> To establish standing, an unincorporated association must show: (1) the organization's members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Id.* at *3 (internal quotation marks omitted).  "OSIC also must be able to 'fairly and adequately protect the interests of the association and its members.'"  *Id.* at *3 n.1 (quoting Fed. R. Civ. P. 23.2).[2]

Other than conclusory statements, Moving Defendants have wholly failed to demonstrate how the CD Investors' communications and the agendas relate to the required standing elements or that they are otherwise necessary to assert a challenge to OSIC's standing.  Moving Defendants seek information that arose many years *after* Stanford's collapse—i.e., discussions with Mr. Little, as Examiner and OSIC Chairperson, as well as meeting agendas.   The issue of standing, however, primarily relates to historical data—whether members could sue in their own right—or involves questions this Court has previously addressed in favor of OSIC. *See id.* at 3 & n.1.  On their face, the documents and communications Moving Defendants seek have no bearing on the standing issue.[3]  Thus, Moving Defendants have not shown that the CD Investors' communications and meeting agendas are within the scope of permissible discovery.

---

[2] Judge Godbey actually recognized OSIC's standing on three different bases: (1) OSIC's ability to "pursue fraudulent transfer claims and unjust enrichment claims against third-party transferees because the Receiver stands in the shoes of the Stanford Defendants' creditors"; (2) as an unincorporated association; and (3) "by virtue of this Court's Order constituting it as representative of the Stanford investors." *IMG Worldwide*, 2012 WL 13198118, at *2.

[3] As worded, the only specific guidance provided by First RFP number 33 as to the types of communications sought is information related to the CD Investors' original investments, e.g., their domicile and residence, date and amount of CD purchase, identity of person selling the CD and information/representations made in such sales, etc. (*see* Defs.' App. 24), which has presumably been produced.  The Court need not concern itself with whether such information is considered relevant to OSIC's general standing to bring a claim on behalf of investors defrauded by Stanford or is more accurately characterized as evidence relevant to the number of defrauded investors, amounts invested, and losses

For this reason alone, the Court denies Moving Defendants' Motion to Compel. Even if Moving Defendants could meet their initial burden of establishing that the CD Investors' communications and the agendas were relevant as to the question of OSIC's standing, however, the Court would nevertheless deny Moving Defendants' motion, for the reasons set forth below.

**C. The CD Investors' communications are not responsive to First RFP number 33 or April RFP number 7 and the requests are overly broad.**

Moving Defendants have identified several arguments in support of their request that the Court require OSIC to produce "all communications" between Mr. Little and the CD Investors. Defs.' Mot. 1, 7–11. To begin, Moving Defendants assert that the communications are responsive to First RFP number 33 and April RFP number 7. *Id.* at 7. They dispute OSIC's contention that the order they seek from the Court through the instant motion is broader than the relevant discovery requests, noting that First RFP number 33 included a non-exhaustive list of examples of responsive documents.[4] *Id.* In addition, Moving Defendants posit that producing the communications would not place an undue burden on OSIC or Mr. Little, particularly when viewed in proportion to the damages OSIC seeks.[5] *Id.* at 10.

Under Rule 34, a request for discovery "must describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A). "The test for reasonable particularity is whether the request places the party upon reasonable notice of what is called for

---

[4] incurred (i.e., damages). This historical information's relevance provides the Court no guidance in determining the relevance of post-transactional communications occurring years after the fact between the victim investors and OSIC (or its representative) in evaluating OSIC's standing to pursue claims against the Moving Defendants.

[4] OSIC does not specifically address Moving Defendants' argument that the communications are responsive to First RFP number 33 and April RFP number 7. Instead, OSIC subsumes such analysis in its argument that the requests are overly broad. *See* Pl.'s Resp. 8–9. Because the Court cannot "compel the production of documents under Rule 37 unless the party seeking such an order has served a proper discovery request on the opposing party," however, it specifically addresses Moving Defendants' assertion. *Harper v. City of Dallas*, No. 3:14-cv-2647-M, 2017 WL 3674830, at *14 (N.D. Tex. Aug. 25, 2017) (citation omitted).

[5] Moving Defendants also argue that the communications are not privileged. *See* Defs.' Mot. 10–11. Because OSIC does not urge and argue this objection in its response before the Court, any objection on this basis is waived.

and what is not." *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 575 (N.D. Tex. 2018) (citations and internal quotation marks omitted). That is, "the party requesting the production of documents must provide sufficient information to enable [the party to whom the request is directed] to identify responsive documents." *Id.* (citations and internal quotation marks omitted). Although what constitutes sufficient information depends on the circumstances of the case, "a discovery request should be sufficiently definite and limited in scope that it can be said to apprise a person of ordinary intelligence what documents are required and [to enable] the court . . . to ascertain whether the requested documents have been produced." *Id.* (citations and internal quotation marks omitted).

"All-encompassing demands that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Rule 34(b)(1)(A)." *Id.* (citation and internal quotation marks omitted). For example, requests that seek "all documents which relate in any way to the complaint" or "all documents and records that relate to any of the issues" in the case do not meet the Rule 34 standard. *Id.* at 575–76 (citations and internal quotation marks omitted). Ultimately, "[a] Rule 34(a) request made with reasonable particularity does not require a reasonable attorney or party attempting to properly respond to ponder and to speculate in order to decide what is and what is not responsive." *Id.* at 575 (citation and internal quotation marks omitted).

First RFP number 33 seeks "[a]ll Documents and Communications, without regard to their date, Relating to the investors in SIBL CDs on behalf of whom [OSIC] purport[s] to prosecute the Action against and seek recovery from Defendants." Defs.' App. 24. The request is followed by a "non-exhaustive" list of documents Defendants sought. *Id.* April RFP number 7 asks Mr. Little to produce "[a]ll Documents and Communications between You and/or Your counsel and any Stanford Investor Relating to any of the Defendants." *Id.* at 92. The subpoena defines "You" and

"Your" to "mean John J. Little, in [his] capacity as the Court-Appointed Examiner, as well as any agents, representatives, attorneys, and/or any other Person or Persons acting or purporting to act on [his] behalf." *Id.* at 87.

Moving Defendants argue that the list included in First RFP number 33 is non-exhaustive,[6] and the communications are "obviously responsive." Defs.' Mot. 7–8. OSIC, on the other hand, asserts that the relevant RFPs, as written, are overly broad, and in seeking "all communications" between Mr. Little and the CD Investors, Moving Defendants attempt to obtain information outside the scope of the already-broad RFPs. Pl.'s Resp. 7–9.

Through their motion, Moving Defendants essentially ask this Court to ignore the "including, but not limited to" language in the RFPs and find that the CD Investors' communications are responsive because the requests seek "all" documents and communications. *See* Defs.' App. 24, 92; Defs.' Mot. 7–8. By disregarding the non-exhaustive list of examples, however, the requests are overly broad, requiring OSIC and Mr. Little[7] to produce "all" communications and documents regardless of date and subject matter, and not limited to the claims and defenses in this action. This type of "blockbuster" discovery request "violate[s] Rule 34's particularity requirement." *O'Donnell v. Zavala Diaz*, Civil Action No. 3:17-CV-1922-S (BK), 2018 WL 6335566, at *2 (N.D. Tex. Aug. 21, 2018) (compiling cases); *see, e.g., Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649 (10th Cir. 2008) (holding that discovery requests asking for "all communications between [Walgreen] and [employee]" or "all email from [employee's]

---

[6] Moving Defendants do not specifically reference April RFP number 7 in connection with this argument. *See* Defs.' Mot. 7–8.

[7] Although not raised by the parties, the Court also observes that TD Bank served the April RFPs on Mr. Little in his capacity as Examiner—not as the Chairperson for OSIC. Defs.' App. 77–80. Indeed, the request defines "You" and "Your" to "mean John J. Little, in [his] capacity as the Court-Appointed Examiner." *Id.* at 87. But Moving Defendants now ask the Court to require Mr. Little to produce *all* communications with the CD Investors, without regard to whether they occurred in his capacity as Examiner or as Chairperson. In this regard Moving Defendants' request also falls outside the scope of the RFP, as written.

Walgreen's email account . . . were overbroad" and "cast a much wider net, encompassing much information irrelevant to [plaintiff's] stated purpose"); *Cook v. City of Dallas*, Civil Action No. 3:12-CV-3788-N, 2017 WL 9534098, at \*9 (N.D. Tex. Apr. 10, 2017) (Godbey, J.) (sustaining defendant's objections to RFPs that requested, inter alia, "[a]ll email, electronically stored information, . . . documents and other communications" by employee and related to information involving plaintiff and the facts alleged in her complaint, finding that requests were "not sufficiently particular" and therefore amounted to "blockbuster" requests); *Lopez*, 327 F.R.D. at 575–76.[8]

Considering the requests as written—i.e., with the "including, but not limited to" language—similarly does not necessitate production. The non-exhaustive list of examples in First RFP number 33 focuses on factual information about the CD Investors as well as details about their SIBL CD purchases. *See* Defs.' App. 24 (asking OSIC to provide, inter alia, the "domicile" and current location of the CD Investors as well as the amount and method by which they paid for CDs). April RFP number 7 references one limited communication—Mr. Little's "correspondence 'with a Stanford CD Investor concerning questions raised by such investor regarding the claims against TD Bank,' as referenced in [Mr. Little's] motion for approval of [his] twenty-ninth application for payment of attorneys' fees, filed in *Securities and Exchange Commission v. Stanford International Bank Limited, Ltd., et al.*, No. 09-cv-00298, on October 22, 2018 (Dkt. No.

---

[8] The Court is not required to redraft overly broad discovery requests. *See, e.g.*, *Seaman v. Seacor Marine, L.L.C.*, CIVIL ACTION NO: 07-3354-JCZ-SS, 2008 WL 11452431, at \*3 (E.D. La. Mar. 17, 2008) (explaining that although some of the responsive information was relevant to plaintiff's claim, the "discovery requests as drafted [were] too broad," and "[i]t is not the responsibility of the court to redraft them"); *Haensel v. Chrysler Corp.*, No. CIV.A. 96–1103, 1997 WL 537687, at \*2 (E.D. La. Aug. 22, 1997) ("Many of plaintiffs' subject areas and requests for production were overbroad. The Court refuses to rewrite these requests for the plaintiffs in order to transform them into narrow, specific inquiries.").

2794)."[9]  *Id.* at 92.  The "including, but not limited to" language, though not exhaustive, defines the parameters within which the parties could reasonably expect responsive information.[10]  Using the illustrative examples as guides, the Court cannot find that "all" communications and documents between Mr. Little and the CD Investors are responsive to First RFP number 33 and April RFP number 7.

In sum, the only way to find that the CD Investors' communications are responsive to First RFP number 33 and April RFP number 7 is to disregard the "including, but not limited to" language.  Applying such a construction, however, results in impermissibly broad requests that force the Court "to ponder and to speculate . . . what is and what is not responsive."  *Lopez*, 327 F.R.D. at 575 (citation omitted).  For these reasons, the Court sustains OSIC's objection on the basis that the requests are overly broad.[11]

---

[9] Because Moving Defendants only argue that this communication—as referenced in Mr. Little's twenty-ninth fee application—is relevant in relation to OSIC's standing, the Court does not order its production.  Moving Defendants have provided no authority for their proposition that any "admission" or opinion expressed by Mr. Little, whether expert or lay, would have any bearing on OSIC's standing. *See* Defs.' Mot. 9–10.

[10] Several courts have noted that use of the phrase "including, but not limited to" results in impermissibly broad discovery requests. *See, e.g., Macias v. Sw. Cheese Co., L.L.C.*, No. Civ. 12-350 LH/WPL, 2013 WL 11326737, at *4 (D.N.M. Oct. 2, 2013) (overruling plaintiff's objections to magistrate judge's order denying motion to compel, noting that RFP's use of the phrase "including but not limited to" was "expansive, not restrictive" and "would result in the unduly burdensome disclosure of far more emails of management than were relevant to Plaintiff's claims"); *see also Shapiro v. America's Credit Union*, CASE NO. C12-5237-RBL, 2013 WL 12310679, at *2 (W.D. Wa. May 31, 2013) (stating that within the context of a deposition notice, "'including but not limited to' language [is] often overbroad," making it difficult for the corporate designee to prepare for every conceivable topic).  The Court agrees to the extent Moving Defendants argue that the "including, but not limited to" includes categories of documents and communications not related to the listed examples.

[11] To the extent OSIC resists production of the CD Investors' communications on the basis that it would place an undue burden on Mr. Little, its objection is overruled.  Pl.'s Resp. 11.  Through his declaration, Mr. Little estimates that he has in his possession more than 80,000 email communications (Decl. of John J. Little 119 ¶ 17, 120 ¶ 19, ECF No. 788-1 [hereinafter Little Decl.]), and that, in order to search and classify them to produce responsive communications, he would need to expend more than one hundred hours.  *Id.* at 120–21 ¶¶ 21–22.  He also notes that many of the communications "are in Spanish, which [he] do[es] not speak"; thus, he "would have to engage a third party service to assist with both translations and email review." *Id.*  Weighing the time and expense involved against the importance of the discovery and the amount of damages OSIC seeks (up to $9 billion from Defendants), the Court finds that Mr. Little and OSIC have not adequately demonstrated that requiring Mr. Little to produce responsive information under April RFP number 7 would constitute an undue burden.

**D. The OSIC agendas are not responsive to First RFP numbers 36 and 28 and the requests are overly broad.**

Moving Defendants ask the Court to order OSIC to produce all agendas generated by OSIC for its meetings. Defs.' Mot. 1. The agendas, Moving Defendants assert, are covered by First RFP numbers 36 and 28. RFP number 36 seeks "[a]ll Documents and Communications, without regard to their date, Relating to [OSIC's] decision to intervene in th[is] Action and assert claims against Defendants." Defs.' App. 25. The request goes on to state that responsive documents, include, but are not limited to, "Documents and Communications Relating to any investigation by the Receiver and/or OSIC between February 17, 2009 and December 5, 2011 Relating to the banking relationships between each Defendant and any Stanford-Owned Entity or Entities and/or the conduct of any Defendant upon which Your claims in the Action are based." *Id.* RFP number 28 asks for "[a]ll Documents and Communications, without regard to their date, Relating to all assignments between the Receiver and OSIC, including, but not limited to, copies of all such assignments between the Receiver and OSIC." *Id.* at 23.

Moving Defendants contend that because Mr. Little created the agendas, which total approximately forty in number, OSIC cannot argue that "producing these agendas would be unduly burdensome." Defs.' Mot. 14. Moving Defendants also observe that although OSIC has posited that the agendas are privileged attorney-client communications as well as protected attorney work product, OSIC has not produced a privilege log (*id.* at 14–15) and, even if it had, such documents are not subject to the privilege. *Id.* at 15.

OSIC counters, however, that the meeting agendas are not responsive to the RFPs cited by Moving Defendants and contain privileged information.[12] Pl.'s Resp. 11. Regarding responsiveness, OSIC specifically contends that "Moving Defendants failed to request production

---

[12] The Court does not address the privilege question in light of its holding below.

of the OSIC agendas in a timely request for production," noting that First RFP numbers 36 and 28 do not reference "agendas" or "meetings." *Id.* at 12. The Court understands OSIC as arguing that First RFP numbers 36 and 28 are overbroad in that they do not specifically request the agendas or otherwise describe the documents sought with reasonable particularity, in violation of Rule 34. *See id.* (arguing that "[a] reasonable reading of the [RFPs] . . . does not . . . include the agendas for OSIC's meetings" and citing Fed. R. Civ. P. 34(b)(1)).

The Court agrees that, similar to its conclusion regarding the CD Investors' communications, First RFP numbers 36 and 28 are overbroad and the agendas are not responsive to the requests. First RFP number 36 similarly includes a "non-exhaustive" list (i.e., "including, but not limited to . . .") of documents relating to "any investigation by the Receiver and/or OSIC between February 17, 2009 and December 5, 2011" regarding "the banking relationship between each Defendant and any Stanford-Owned Entity and/or the conduct of any Defendant . . . ." Defs.' App. 25. Ignoring the example and any related information, however, a complete response would require the production of virtually every document or communication regarding OSIC's decision to intervene, "without regard to their date." *Id.*[13] First RFP number 28 likewise does not comply with Rule 34 in that the request fails to sufficiently define and limit the scope of the request. In essence, Moving Defendants ask this Court to read the RFPs to include *all* documents and communications in OSIC's possession relating to intervention and assignment. Such requests violate Rule 34's reasonably particularity requirement and are therefore impermissible. *See, e.g.*, *Cook*, 2017 WL 9534098, at *9.

---

[13] Even considering the "non-exhaustive" language does not save the day for Moving Defendants—the documents described do not allow a reasonable person to ascertain that OSIC meeting agendas would be responsive to the request. *See Lopez*, 327 F.R.D. at 575.

As OSIC points out, Moving Defendants "were in possession of OSIC's Bylaws, which call for the preparation of agendas in conjunction with OSIC meetings, when they drafted their document requests." Pl.'s Resp. 12. Had Moving Defendants wanted the agendas at the time they issued the RFPs, they simply had to ask for them. As written, First RFP numbers 36 and 28 requires the Court, and OSIC, to guess which documents are responsive.

Finally, the Court also notes that Moving Defendants do not contend that the relevant requests "describe with reasonable particularity *each item* . . . to be inspected," as required by Rule 34. Fed. R. Civ. P. 34(b)(1) (emphasis added); *see* Defs.' Mot. 13 (criticizing OSIC's position as suggesting that the requests must specifically request the agendas to comply with Rule 34, which "is impermissibly narrow"). Instead, Moving Defendants rely on the requests' broad definitions of "Documents" and "Communications" in support of their argument that the "agendas are undeniably captured by these requests"—i.e., First RFP numbers 36 and 28. Defs.' Mot. 12; *see* Defs.' App. 7–8. As presented, however, the requests are impermissibly broad. *See, e.g.*, *Lopez*, 327 F.R.D. at 575–76.

In sum, the Court concludes that the OSIC meeting agendas are not responsive to First RFP numbers 36 and 28. In addition, the relevant RFPs are overly broad. The Court sustains OSIC's objections on these bases.

## III.   Conclusion

For the reasons set forth above, the Court **DENIES** Moving Defendants' Motion to Compel. ECF No. 786.

**SO ORDERED.**

Dated: November __6__, 2020.

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE