IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PEGGY ROIF ROTSTAIN, *et al.* | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:09-cv-2384-N |
| | § | |
| TRUSTMARK NATIONAL BANK, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses the Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction of defendants HSBC Bank PLC ("HSBC"), Société Générale Private Banking (Suisse) S.A. ("SG"), and Blaise Friedli (collectively, the "Foreign Defendants") [744], [746], [752] and SG's motions for leave to file supplemental authority [844], [846] and to certify interlocutory appeal [637]. The Court grants SG's motions for leave. Because the Court finds that the Foreign Defendants have sufficient minimum contacts with Texas, the Court denies the motions to dismiss. The Court denies certification for an interlocutory appeal.

## I. ORIGINS OF THE MOTIONS

This case arises out of the Stanford Ponzi scheme. The facts of the Stanford scheme are well known to the litigants and to this Court. Stanford operated, directly or indirectly, a network of over 100 interrelated companies in over 13 countries to perpetrate his Ponzi scheme. *See generally* Order, July 30, 2012 [176] (the "COMI Order"), *In re Stanford Int'l Bank, Ltd.*, Civil Action No. 3:09-CV-0721 (N.D. Tex.). This Court appointed Ralph S.

MEMORANDUM OPINION AND ORDER – PAGE 1

Janvey to serve as Receiver for the Stanford entities, and take control of the Receivership Assets and the Receivership Records. *See* Second Am. Order Appointing Receiver, July 19, 2010 [1130] (the "Receivership Order"), *SEC v. Stanford Int'l Bank*, Civil Action No. 3:09-CV-0298-N (N.D. Tex.). The Receivership Order vested the Receiver with "the full power of an equity receiver under common law as well as such powers as are enumerated" in the Receivership Order. *Id.* at 3. Among these enumerated powers, the Court "authorized [the Receiver] to immediately take and have complete and exclusive control, possession, and custody of the Receivership Estate and to any assets traceable to assets owned by the Receivership Estate." *Id.* at 4. Additionally, the Court "specifically directed and authorized [the Receiver] to . . . [c]ollect, marshal, and take custody, control, and possession of all the funds, accounts, mail, and other assets of, or in the possession or under the control of, the Receivership Estate, or assets traceable to assets owned or controlled by the Receivership Estate, wherever situated," *id.*, and to file in this Court "such actions or proceedings to impose a constructive trust, obtain possession, and/or recover judgment with respect to persons or entities who received assets or records traceable to the Receivership Estate." *Id.* at 5. The Court also, by substantial agreement of the interested parties, appointed the Official Stanford Investors Committee, to act much like a creditors' committee in a bankruptcy proceeding. *See* Order, Aug. 10, 2010 [1149], *SEC v. Stanford Int'l Bank*, *supra*.

The instant case was originally filed in state court in Harris County, Texas by Plaintiff Rotstain as a putative class action against various financial institutions accused of aiding Stanford with his Ponzi scheme. Defendants removed to federal court, and the

MEMORANDUM OPINION AND ORDER – PAGE 2

Judicial Panel on Multidistrict Litigation transferred the case to this Court. The Court granted OSIC's motion to intervene as plaintiff. The Foreign Defendants moved to dismiss for lack of personal jurisdiction [28], [32], [155], [157], [160]. The Court denied the motions, finding that the Foreign Defendants had sufficient minimum contacts with Texas. *See* Order Denying Defs.' 12(b)(2) Mots. Dismiss, June 5, 2014 [194]. Foreign Defendants now argue that developments in the intervening six years demonstrate that Foreign Defendants do not have sufficient minimum contacts with Texas and that the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice.

## II. LEGAL STANDARDS FOR PERSONAL JURISDICTION

Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process. *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993). "Because the Texas Long Arm Statute is coextensive with the confines of due process, questions of personal jurisdiction in Texas are generally analyzed entirely within the framework of the Constitutional constraints of Due Process." *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003). Due process requires that two elements be satisfied. First, the nonresident must have purposefully established "minimum contacts" in the forum state "such that he should reasonably anticipate being haled into court there." *Burger King v. Rudzewicz*, 471 U.S. 462, 474 (1985). Second, the exercise of personal jurisdiction must "comport with 'fair play and substantial justice.'" *Id.* at 476 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)). The minimum contacts analysis ensures that individuals have "fair

MEMORANDUM OPINION AND ORDER – PAGE 3

warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Id.* at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)) (alteration in original).

Specific jurisdiction exists if (1) the cause of action is related to, or arises from, the defendant's contacts with the forum, and (2) those contacts meet the due process standard. *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986). When considering specific jurisdiction in connection with a claim for tortious conduct, a single act by a defendant directed towards Texas that gives rise to a cause of action can support a finding of minimum contacts. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). A court must consider the totality of the circumstances of a case when making the purposeful availment inquiry, as "no single factor, particularly the number of contacts, is determinative." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). "[W]hether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Miss. Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982). Plaintiffs, as the parties seeking to invoke the Court's power, bear the burden of establishing the Court's jurisdiction over the Foreign Defendants. *See Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 219 (5th Cir. 2012) (citing cases). A court must take uncontroverted allegations in the complaint as true, and it must resolve

all factual conflicts in favor of the plaintiff. *Id.* at 219–20 (citing *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004)). In deciding the motion, a court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 344 (5th Cir. 2002) (quoting *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). "But even if the court receives discovery materials, unless there is a full and fair hearing, it should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts." *Walk Haydel & Assocs. V. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008).

### III. THE COURT DENIES THE MOTIONS TO DISMISS

#### A. *Minimum Contacts*

As a preliminary matter, the Court notes that it has previously denied motions to dismiss from the Foreign Defendants. *See* Order Denying Defs.' 12(b)(2) Mots. Dismiss, June 5, 2014 [194]. There, the Court found that each of the Foreign Defendants had sufficient minimum contacts with Texas through its relationship with Stanford and Stanford personnel. The Foreign Defendants now allege that the intervening six years of discovery have revealed that the exercise of jurisdiction is improper. In response, Plaintiffs argue that HSBC's motion is barred by Rule 12 and law of the case. The Court addresses Plaintiffs' procedural argument first, and then addresses the Foreign Defendants' arguments as to specific personal jurisdiction.

Plaintiffs argue that Rule 12 does not permit a party, in response to an amended complaint, to make a second motion to dismiss on the same substantive basis as a prior

MEMORANDUM OPINION AND ORDER – PAGE 5

motion to dismiss which was denied.  *See Sears Petroleum & Transp. Corp. v. Ice Ban Am., Inc.*, 217 F.R.D. 305, 307 (N.D.N.Y. 2003) (noting that an "amended complaint does not automatically revive" ability "to challenge the sufficiency of the amended complaint with arguments that were previously considered and decided by the court in the first motion to dismiss").   However, Rule 12 does not apply in this context.  FED. R. CIV. P. 12(g)(2) (prohibiting a party from making "another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion").  Here, the Foreign Defendants have consistently objected to this Court's exercise of personal jurisdiction.  Moreover, personal jurisdiction "may be reviewed again at subsequent stages in the trial court proceedings as evidence accumulates."  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 n.3 (10th Cir. 2008).

Plaintiffs also argue that law of the case bars Foreign Defendants from moving to dismiss an amended complaint on the same grounds as their prior motion to dismiss when the operative facts are the same.  The law of the case doctrine does not apply here, where the determination of personal jurisdiction has not been decided on appeal.  Rather, the court is "free to reconsider [an interlocutory order] and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law."  *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1994), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994) (en banc).  Having addressed Plaintiffs' procedural arguments, the Court turns to the merits of Foreign Defendants' personal jurisdiction arguments.

MEMORANDUM OPINION AND ORDER – PAGE 6

Foreign Defendants allege that this Court lacks specific personal jurisdiction over them.  While the Court has considered this issue multiple times in the past, Foreign Defendants argue that additional jurisdictional discovery reveals that Foreign Defendants lack sufficient minimum contacts with Texas.  The Court disagrees and denies the motions to dismiss.

*1. HSBC* — HSBC argues that (1) none of the conduct giving rise to Plaintiffs' claims against HSBC has any connection to Texas; (2) HSBC's Texas contacts have no connection to Plaintiffs' claims for damages; (3) HSBC's Texas contacts were fortuitous and cannot support specific jurisdiction, and (4) the mere fact that Texas residents were injured by Stanford's Ponzi scheme is insufficient to confer jurisdiction.

Although HSBC argues that none of the conduct giving rise to Plaintiffs' claims against HSBC has any connection to Texas, HSBC's argument rests on the premise that its client, Stanford International Bank ("SIB") operated as an Antiguan bank.  Thus, HSBC argues, its contacts may be described as either contacts between London and Antigua, or from Texas to London.  However, this Court and the Fifth Circuit have already held that, notwithstanding the appearance of multiple legal entities, Stanford's financial empire was a single business enterprise centered in Houston, Texas.  *See* COMI Order 36, 41–42; *Janvey v. Brown*, 767 F.3d 430, 436 (5th Cir. 2014) ("As prior opinions of this Court and the district court have made clear, the Stanford Ponzi scheme was centered in and operated out of Houston, Texas.").  The Court remains unpersuaded by HSBC's arguments that HSBC merely engaged in conduct directed from London to Antigua.  The record demonstrates that, not only was Stanford's empire centered in Houston, but that HSBC was

MEMORANDUM OPINION AND ORDER – PAGE 7

well aware of that fact when it availed itself of Stanford's business. *See, e.g.*, Pls.' App. 52 [774] (HSBC's local relationship manager for SIB receiving an email arranging for a "visit to Stanford's headquarters here in Houston"), 185–86 (HSBC sales officer testifying that he understood SIB as being based in Texas), 188 (HSBC's Senior Relationship Manager writing that Stanford is a "Texas based bank"); *see also Fintech Fund, FLP v. Horne*, 836 F. App'x 215, 221 (affirming district court's personal jurisdiction holding when foreign defendant's fraudulent statements in phone calls and emails were directed towards a company that defendant knew was a Texas company).

Additionally, the Court notes the extensive relationship between the parties. *See Stuart*, 772 F.2d at 1192–94 (assessing the quality and quantity of defendant's business in forum). And while the Fifth Circuit has given weight to which party initiated particular contacts, *see Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429 (5th Cir. 2014), that analysis plays a much smaller role in cases such as this one, where the parties engaged in a mutual business relationship that spanned decades. *See* Order Den. Recons. of Personal Jurisdiction Orders, Dec. 9, 2014 [221] (distinguishing this case from *Monkton*'s "sparing contacts" with Texas business owner). Indeed, holding that the complex and lengthy banking relationship between HSBC and Stanford constituted a one-sided relationship with all contacts flowing from Texas to London does not comport with the Supreme Court's instructions to conduct a "highly realistic" jurisdictional analysis. *Burger King Corp.*, 471 U.S. at 479 (emphasizing that the "terms of the contract and the parties' actual course of dealing" must be evaluated to determine minimum contacts); *see also Miss. Interstate Express, Inc.*, 681 F.2d at 1006 ("[W]hether the minimum contacts are sufficient to justify

subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state.").

Here, the record is clear that HSBC knew that investment instructions and communications originated with Stanford employees in Houston.  Moreover, HSBC's regular communications with Stanford personnel, *see, e.g.*, Pls.' App. 227 ("Of course I would be very happy to speak at the telephone or arrange conference calls . . . ."), HSBC's trips to Texas to visit Stanford personnel, *see* Pls.' App. 210, 220–21, and HSBC's numerous monetary transfers to Stanford accounts, *see, e.g.*, Pls.' App. 128 (transfers to money managers), 215–17 (transfer to Allen Stanford), connected it with Texas in a meaningful way.  *See, e.g.*, *Burger King Corp.*, 471 U.S. at 481 (relying in part on defendant's "continuous course of direct communications by mail and by telephone" to determine personal jurisdiction); *Trinity Indus., Inc. v. Myers & Assocs., Ltd.*, 41 F.3d 229, 230–31 (5th Cir. 1995) (determining that personal jurisdiction existed where the defendant created an ongoing relationship with the forum); *MJCM, LLC v. Sky Bank*, No. Civ.A. H-05-0664, 2005 WL 2121549, at *5 (S.D. Tex. Aug. 31, 2009) (determining that personal jurisdiction existed where "parties entered into a long-term agreement requiring extensive interaction between the two companies").  And to the extent that HSBC attempts to distance itself from HSBC Bank USA, N.A.'s contacts with Stanford, the record provides at least a prima facie case that HSBC directed that contact.  *See* Pls. App. 227 (noting that while the relationship would be managed from London, HSBC "will also have involvement from our local relationship teams as required"); *see also Daimler AG v. Bauman*, 571 U.S. 117, 135

MEMORANDUM OPINION AND ORDER – PAGE 9

n.13 (2014) ("As such, a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there.").  The Court determines that there are sufficient minimum contacts to support specific personal jurisdiction as to HSBC.

HSBC also argues that Plaintiffs' claims do not arise from their contacts with Texas. However, as the Court previously concluded, the provision of "even routine banking services for the Stanford scheme . . . facilitated the financial transactions and operations that formed the lifeblood of the Stanford scheme."  *See* Order 26, April 21, 2015 [234]. Because HSBC's contacts with Texas relate to its provision of banking services for Stanford, the Court determines that Plaintiffs' claims arise out of HSBC's contacts with Texas.

**2. *SG and Friedli* —** SG and Friedli, in large part, raise similar arguments to HSBC's.[1]  They argue, for instance, that the Court lacks specific jurisdiction over them because Stanford International Bank Limited ("SIBL") is domiciled in Antigua, that the Stanford Financial Group operated offices in Memphis and Miami, that the beneficiaries of SG accounts were in Antigua, Switzerland, and Panama, and that transfers were to banks in London, Puerto Rico, the Virgin Islands, and Venezuela.  Moreover, Friedli alleges that his two trips to Texas were unrelated to this suit.  SG similarly argues that it did not initiate contacts with Texas, rather, Stanford and his associates initiated wire transfers that SG then

---

[1] As the Court stated in its prior Order [194], Friedli was acting as SG's agent and his contacts are therefore attributable to SG.  Moreover, the Court has jurisdiction over Friedli because he is alleged to have personally taken or directed the majority of SG's actions.  *See Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 694 (S.D. Tex. 2011).

MEMORANDUM OPINION AND ORDER – PAGE 10

executed.  For largely the same reasons, the Court determines that there are sufficient minimum contacts to support specific personal jurisdiction as to SG and Friedli.

First, the Court notes that this is not a case in which SG has been haled into court due to "random, fortuitous, or attenuated contacts" or due to the "unilateral activity" of Stanford.  *Walden v. Fiore*, 571 U.S. 277, 286 (2014); *Monkton*, 768 F.3d at 433–34; *see also* Order Den. Recons. of Personal Jurisdiction Orders, Dec. 9, 2014 [221] (distinguishing *Monkton*, 768 F.3d 429).  Rather, SG engaged in a 24-year business relationship with Stanford, during which SG maintained at least seven accounts for Stanford.  Plaintiffs alleged that

> SG: (1) provided discretionary brokerage, investment management, and merchant banking services to multiple Stanford entities, managing hundreds of millions of dollars of CD proceeds; (2) maintained and facilitated a secret slush fund account holding hundreds of millions of dollars for Stanford, which was not on Stanford's books, that was used in dispensing substantial bribes to Stanford regulators and auditors so they would conceal the existence of the Ponzi scheme from the public; (3) made numerous communications with Stanford employees and agents in Texas; (4) made numerous multi-million dollar wire transfers to Stanford in and out of Texas; (5) through Friedli, traveled twice to Houston to meet with Stanford regarding Stanford business; (6) through Friedli, served on Stanford's International Advisory Board; and (7) as discussed below, fraudulently conveyed $95 million of investor proceeds to itself as the Ponzi scheme was about to collapse, causing injury to Stanford in Texas.

Order Denying Defs.' 12(b)(2) Mots. Dismiss, June 5, 2014 [194].  These contacts can hardly be compared to the sparing contacts found in *Monkton* or the singular, isolated contact in *Walden*.  And while sparing contacts initiated by a plaintiff may be insufficient to confer jurisdiction over a foreign bank, *Monkton*'s analysis of which party initiated individual communications carries less weight when the parties engaged in a mutual

MEMORANDUM OPINION AND ORDER – PAGE 11

business relationship that spanned decades and involved numerous communications and multi-million dollar transactions into and out of Texas.  *Walden*, 571 U.S. at 290 (looking to "whether the defendant's conduct connects him to the forum in a meaningful way").

And as with HSBC, it is insufficient for SG to claim that it did not engage in acts in Texas when it was aware of the fact that Stanford was based in Texas throughout the lengthy duration of their banking relationship.  Despite Foreign Defendants' repeated characterizations of their relationship with Stanford as an Antiguan-based relationship, the Court believes that it is well-established at this point in the litigation that Stanford was, and held itself out to be, based in Texas.  *See generally* COMI Order [176].  And because SG directed its banking services to the Texas-based Stanford Ponzi scheme, the tortious nature of its directed activity constitutes purposeful availment.  *Wien Air*, 195 F.3d at 213. Moreover, the contacts that SG had with Texas, including Friedli's travels to Houston, were to solicit Stanford business and to improve the banking relationship between SG and Stanford.  The Court determines that SG and Friedli have sufficient minimum contacts with Texas and that Plaintiffs' claims arise from those contacts.

## B.  *The Exercise of Jurisdiction Comports with Fair Play and Substantial Justice*

The Court now turns to whether the exercise of personal jurisdiction over Foreign Defendants would offend traditional notions of fair play and substantial justice.  Once minimum contacts are found, as here, "it is rare to say the assertion [of jurisdiction] is unfair."  *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (alteration in original) (quoting *Wien Air*, 195 F.3d at 215).  Factors bearing on the inquiry are: (1) the burden on the nonresident defendant of litigating in the forum state; (2) the forum state's interest; (3)

MEMORANDUM OPINION AND ORDER – PAGE 12

the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the administration of justice; and (5) the shared interest of the several states in furthering "fundamental social policies." *Id.* at 760 (quoting *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006)).  Applying these factors, the Court previously determined that the exercise of personal jurisdiction over Foreign Defendants would not offend traditional notions of fair play and substantial justice.  Foreign Defendants argue that, because of parallel proceedings initiated by the Antiguan Joint Liquidators in both England and Switzerland, the exercise of personal jurisdiction no longer comports with fair play and substantial justice.  For the following reasons, the Court disagrees.

The Joint Liquidators' parallel suits do not significantly change the calculus under the factors listed above.  First, the Foreign Defendants are still able to afford the burden of litigating in Texas.  As stated in the Court's prior Order, Foreign Defendants are substantial commercial entities (or the employee of one) and can certainly afford the burden of litigating in Texas.  Second, Texas still retains an interest in this dispute, as Stanford's empire was centered here, and Texas investors suffered losses from the Ponzi scheme. Third, while Plaintiffs may be less interested in this forum in light of the parallel litigation, Plaintiffs' interest in securing relief in this action, which has been pending for far longer than either the Swiss or English suits, remains substantial.  Plaintiffs have invested significant resources in this case.  Requiring Plaintiffs to restart their litigation efforts through the Joint Liquidators' lawsuits hardly strikes this Court as fair or reasonable. Fourth, the interest of efficient administration continues to favor resolving this dispute under the MDL.  Although the Foreign Defendants argue that the Stanford MDL is largely

MEMORANDUM OPINION AND ORDER – PAGE 13

over, this Court remains the designated venue for Stanford pretrial proceedings.  Finally, the shared interest of the several states continues to favor maintaining this action.  Here, Plaintiffs allege that Foreign Defendants' conduct associated with the Texas-based Stanford Ponzi scheme violated Texas law.  Thus, the exercise of personal jurisdiction over Foreign Defendants by a federal court in Texas is neither unreasonable nor unfair. Accordingly, the Court determines that the exercise of personal jurisdiction over Foreign Defendants does not offend traditional notions of fair play and substantial justice.

### CONCLUSION

Because the Foreign Defendants have sufficient minimum contacts with Texas and the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice, the Court determines that it has personal jurisdiction over the Foreign Defendants.  Accordingly, the Court denies the Foreign Defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2).  The Court denies certification for an interlocutory appeal.

Signed August 3, 2021.

David C. Godbey
United States District Judge

MEMORANDUM OPINION AND ORDER – PAGE 14