**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| GUTHRIE ABBOTT, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| TRUSTMARK NATIONAL BANK, *et al.*, | § | |
| | § | Civil Action No. 4:22-CV-00800 |
| Defendants. | § | |
| | § | |
| | § | |
| | § | |
| | § | |

---

**JOINT PRETRIAL ORDER**

---

Plaintiff The Official Stanford Investors Committee ("OSIC") and Defendants HSBC Bank, plc ("HSBC"),[1]  The Toronto-Dominion Bank ("TD Bank"), and Bank of Houston sued herein as Independent Bank ("Bank of Houston") (collectively, the "Defendants") respectfully submit this Joint Pretrial Order pursuant to Local Rule 16.2 and the Fifth and Final Amended Scheduling Order (ECF No. 1326).

1. **APPEARANCE OF COUNSEL**

*List each party, its counsel, and counsel's address and telephone number in separate paragraphs.*

**For OSIC:**

Kevin M. Sadler (Attorney-in-Charge)
**Baker Botts LLP**
1001 Page Mill Road
Building One, Suite 200
Palo Alto, California 94304-1007

---

[1]     HSBC joins this joint pretrial order subject to, and without waiving, its personal jurisdiction defense.

Telephone: (650) 739-7500
Email: kevin.sadler@bakerbotts.com

Scott D. Powers
David T. Arlington
Stephanie Cagniart
Brendan Day
Ariel D. House
Mary Margaret Steinle
**Baker Botts LLP**
401 South 1st Street, Suite 1300
Austin, Texas 78704
Telephone: (512) 322-2500
Email: scott.powers@bakerbotts.com
Email: david.arlington@bakerbotts.com
Email: stephanie.cagniart@bakerbotts.com
Email: brendan.day@bakerbotts.com
Email: ariel.house@bakerbotts.com
Email: marymargaret.steinle@bakerbotts.com

James R. Swanson (Attorney-in-Charge)
Caroline H. Paschal
Lara K. Richards
Benjamin D. Reichard
Lance C. McCardle
Molly L. Wells
**Fishman Haygood LLP**
201 St. Charles Ave, Suite 4600
New Orleans, LA 70170
Telephone: 504-586-5252
Email: jswanson@fishmanhaygood.com
Email: hpaschal@fishmanhaygood.com
Email: lrichards@ fishmanhaygood.com
Email: breichard@fishmanhaygood.com
Email: lmccardle@fishmanhaygood.com
Email: mwells@fishmanhaygood.com

Peter D. Morgenstern
Joshua E. Abraham
**Butzel Long PC**
477 Madison Avenue, Suite1230
New York, NY 10022
Telephone: 212-818-1110
Email: morgenstern@butzel.com
Email: abraham@butzel.com

Edward C. Snyder, III
**Edward C. Snyder Attorney at Law PLLC**
700 N. St. Mary's Street, Suite 1560
San Antonio, TX 78205
Telephone: 210-630-4200
Email: esnyder@casnlaw.com

Jesse R. Castillo
**Law Offices of Jesse R. Castillo PLLC**
700 N. St. Mary's Street, Suite 1560
San Antonio, TX 78205
Telephone: 210-630-4200
Email: jcastillo@jcastlaw.com

Scott M. Berman
Geoffrey Cajigas
Philippe Adler
David Joseph Ranzenhofer
**Friedman Kaplan Seiler & Adelman LLP**
7 Times Square, 28th Floor
New York, NY 10036
Telephone: 212-833-1100
Email: sberman@fklaw.com
Email: gcajigas@fklaw.com
Email: padler@fklaw.com
Email: dranzenhofer@fklaw.com

**For Defendant TD Bank:**

Rodney Acker
Ellen Sessions
**NORTON ROSE FULBRIGHT US LLP**
2200 Ross Avenue, Suite 3600
Dallas, TX 75201-7932
T:  (214) 855-8000
F:  (214) 855-8200
rodney.acker@nortonrosefulbright.com
ellen.sessions@nortonrosefulbright.com

Gary Y. Gould
**NORTON ROSE FULBRIGHT US LLP**
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
T:  (713) 651-3529
gary.gould@nortonrosefulbright.com

Lynn K. Neuner (Attorney-in-Charge)
Peter E. Kazanoff
Linton Mann III
Alicia N. Washington
**SIMPSON THACHER & BARTLETT LLP**
425 Lexington Avenue
New York, NY 10017
T: (212) 455-2000
F: (212) 455-2502
lneuner@stblaw.com
pkazanoff@stblaw.com
lmann@stblaw.com
alicia.washington@stblaw.com

**For Defendant HSBC:**

John K. Schwartz
Kent Hofmann
**LOCKE LORD LLP**
600 Congress Avenue, Suite 2200
Austin, TX 78701
T: (512) 305-4806
F: (512) 305-4800
jschwartz@lockelord.com
khofmann@lockelord.com

Roger B. Cowie
Katherine S. Wright
**LOCKE LORD LLP**
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
T: (214) 740-8000
F: (214) 740-8800
rcowie@lockelord.com
katie.wright@lockelord.com

**For Defendant Bank of Houston:**

Charles L. Babcock
Paul C. Watler
Edwin M. Buffmire
Jonathan Neerman
Minoo Blaesche
Lindsey M. Brown
**JACKSON WALKER LLP**
2323 Ross Avenue, Suite 600
Dallas, TX 75201
T: (214) 953-6000
F: (214) 953-5822
cbabcock@jw.com
pwatler@jw.com
ebuffmire@jw.com
jneerman@jw.com

mblaesche@jw.com
lbrown@jw.com

## 2. <u>**JOINT STATEMENT OF THE CASE**</u>

*Give a brief statement of the case, one that the judge could read to the jury panel for an introduction to the facts and parties; include names, dates, and places.*

**[Plaintiffs' Proposal]**

This case arises out of the multi-billion dollar fraud scheme perpetrated by Robert Allen Stanford, James Davis, and others through a network of companies that were called the Stanford Financial Group, which included Stanford International Bank, Ltd. ("SIBL").

SIBL sold billions of dollars of certificates of deposit ("CDs"), to thousands of SIBL investors, by promising them consistent, above-market returns and falsely assuring these investors that the CDs were backed by safe, liquid investments. In reality, however, rather than invest the SIBL CD investors' funds to generate returns sufficient to pay CD interest and redemptions, Stanford, Davis, and others used the investors' funds for other purposes, including funding Allen Stanford's lifestyle and the operations of dozens of other companies owned or controlled by Allen Stanford. Because SIBL was not investing funds from the investors as promised, SIBL used CD proceeds from the sale of new CDs to pay back earlier investors.

In February 2009, a U.S. government agency called the Securities and Exchange Commission, or SEC, filed a lawsuit against Allen Stanford, James Davis, SIBL, and others. The SEC asked the court to take over SIBL and the other Stanford companies and place them under the control of the court in what is called a Receivership. By that time, SIBL owed CD holders more than $7 billion, while the assets of all of the Stanford companies (including SIBL) was far less than $1 billion. The Court appointed Ralph Janvey as the Receiver over SIBL, Allen Stanford, and all companies Stanford owned or controlled. Mr. Janvey may be referred to as the "Receiver." The Court later established the Official Stanford Investors Committee ("OSIC") to represent the

5

interests of SIBL's investors.  Since that time, OSIC and the Receiver have worked together to prosecute lawsuits for the benefit of the Stanford Receivership Estate and the investors.

In this case, OSIC has brought claims against three banks in which SIBL and other Stanford companies had numerous accounts, and through which they transferred the money that SIBL received from CD investors.  Those three banks are Toronto Dominion, HSBC, and Bank of Houston, which is now called Independent Bank (the "Banks").  OSIC is the plaintiff in this case, and the Banks are the defendants.  OSIC has alleged two claims against the Banks for which it seeks damages.  First, OSIC alleges that Allen Stanford and James Davis breached fiduciary duties they owed as officers of SIBL and that the Banks knowingly participated in Allen Stanford's and James Davis's breaches of fiduciary duty to SIBL.  Second, OSIC alleges that Allen Stanford and James Davis violated the Texas Securities Act ("TSA"), and that the Banks materially aided and abetted those violations.

The Banks contend they were unaware of Stanford's and Davis's misconduct until after the Stanford companies were placed in Receivership.  The Banks deny that they are liable for OSIC's claims, and deny that OSIC is entitled to damages.

**[Defendants' Proposal]**

This case arises out of a fraud scheme perpetrated primarily by Robert Allen Stanford ("Allen Stanford" or "Mr. Stanford") and James Davis ("James Davis" or "Mr. Davis") through a network of companies that were called the Stanford Financial Group, which included Stanford International Bank, Ltd. ("SIBL").

SIBL issued billions of dollars of certificates of deposit, or "CDs." CDs generally work like this: a CD purchaser contracts with a bank to deposit a fixed sum of money into that bank for a set period of time.  The bank then pays back the CD purchaser that fixed sum, plus interest.

In reality, however, SIBL's CDs were fraudulent.  In February 2009, a government agency called the Securities and Exchange Commission, or SEC, filed a lawsuit against Allen Stanford, James Davis, SIBL, and other Stanford companies.  The SEC asked the court to take over the Stanford companies and place them under the control of the court in what is called a Receivership. By that time, SIBL's obligations to CD holders far exceeded the assets of all of the Stanford companies (including SIBL).

The Plaintiff in this case is the Official Stanford Investors Committee, or OSIC.  After SIBL was placed into Receivership, OSIC was created to coordinate with the Receivership to bring claims against third parties and to represent the interests of SIBL's creditors.  In this case, OSIC has brought claims against three banks with which SIBL and/or other Stanford entities had accounts.  Those three banks, the Defendants in this case, are The Toronto-Dominion Bank, or TD Bank, HSBC Bank plc, or HSBC, and/or Bank of Houston, which is now known as Independent Bank (the "Banks").  None of the Banks sold or marketed SIBL CDs; instead, they provided correspondent banking services to SIBL.

OSIC is asserting two claims against the Banks. First, OSIC alleges that Allen Stanford and James Davis breached fiduciary duties they owed as officers of SIBL and that the Banks knowingly participated in Allen Stanford's and James Davis's breaches of fiduciary duty to SIBL. OSIC alleges that the Banks are responsible for damages caused by those breaches of fiduciary duty as well as exemplary damages.  Second, OSIC alleges that Allen Stanford and James Davis violated the Texas Securities Act ("TSA"), and that the Banks materially aided and abetted those violations and therefore are responsible for damages prescribed by the TSA.

The Banks deny these claims.  The Banks assert that they provided routine correspondent banking services to SIBL and did not know that Allen Stanford and James Davis were running a

criminal enterprise.  Specifically, the Banks say that they did not know that Allen Stanford and James Davis were breaching their fiduciary duties to SIBL or misappropriating funds from SIBL and therefore did not knowingly participate in this improper conduct.  On the TSA claim, the Banks say that they did not know that Allen Stanford and James Davis were selling fraudulent CDs and therefore did not knowingly aid or abet the CD sales fraud.  The Banks deny any responsibility for the damages claimed by OSIC.

### 3.  <u>JURISDICTION</u>

*Briefly specify the jurisdiction of the subject matter and the parties.  If there is an unresolved jurisdictional question, state it.*

**<u>OSIC's Contentions Regarding Subject Matter Jurisdiction.</u>**

This Court has jurisdiction over this matter and the parties following the order remanding this case to the Southern District of Texas.  *See* ECF No. 1151 (suggestion of remand); *see also* ECF No. 1152 (conditional remand order).  The Court has subject matter jurisdiction over this case, and venue is proper, pursuant to 28 U.S.C. § 754.

OSIC contends that the Court has personal jurisdiction over all of the Defendants because this lawsuit arises out of the Defendants' contacts with this forum.  The Court further has personal jurisdiction over Bank of Houston because it was based in this district at all relevant times.  HSBC disputes that it is subject to personal jurisdiction in this forum, but HSBC's personal jurisdiction objection has been overruled.  *See* ECF No. 1135.

**<u>Defendants' Contentions Regarding Subject Matter Jurisdiction.</u>**

Defendants acknowledge the Court's subject matter jurisdiction over Plaintiff's TSA claims and OSIC's knowing participation claims were the subject of recent motion practice that the Court resolved in Plaintiff's favor.  *See* Dkt. 1319 (repose), 1325 (claim preclusion), and 1328

(standing).  Defendants maintain that the Court lacks subject matter jurisdiction over Plaintiff's

TSA claims and OSIC's knowing participation claims and reserve all rights.

## HSBC's Contentions Regarding Personal Jurisdiction.

### The Court does not have Personal Jurisdiction over HSBC Bank plc.

Consistently throughout this litigation, HSBC has asserted that no Texas courts may

exercise personal jurisdiction over it in this matter.  HSBC is an English public limited company

with its principal place of business in London, England.  HSBC does not have any offices,

branches, or other physical operation in Texas.  No HSBC officers, employees, or agents work in

Texas.  And none of HSBC's alleged conduct giving rise to this matter occurred in or was

purposefully directed at Texas.  As a result, HSBC lacks the minimum contacts with Texas

sufficient to support the Court's exercise of either general or specific personal jurisdiction over it.

HSBC first sought dismissal in the *Rotstain* action.  *Rotstain et al. v. HSBC Bank plc et al.*,

Case 3:09-cv-02384-N-BQ, in the Northern District of Texas, Dallas Division.  HSBC sought this

relief through its Motion to Dismiss, filed in May 2010. Dkt. 28.  HSBC later filed a Motion to

Dismiss Intervenor's Complaint in July 2013 in response to the complaint filed by OSIC.  Dkt.

155 at 4-6.  The *Rotstain* Court denied HSBC's Motions in June 2014.  Dkt. 194 at 10.

Discovery continued for the next six years.  None of the evidence developed in that time

provided support for the exercise of personal jurisdiction over HSBC.  That evidence establishes

that the conduct by HSBC that Plaintiffs allege as the basis for their claims in this case occurred

in London, at the request of SIBL employees in Antigua.  As one example among many, among

all of the Stanford companies, only SIBL—an Antiguan bank—opened accounts at HSBC.  The

account was opened and controlled by a SIBL employee from Antigua—Juan Tolentino.

Similarly, the only alleged "diversion" of funds from a SIBL account at HSBC that OSIC's

forensic accounting expert, Karyl Van Tassel, could identify was a payment to the England and Wales Cricket Board Ltd., for $3 million.

Accordingly, in July 2020, HSBC again sought dismissal of the claims against it on the ground of a lack of personal jurisdiction, this time in connection with OSIC's Second Amended Complaint.  Dkt. 746.  The *Rotstain* Court denied that motion in August 2021.  Dkt. 1135.

HSBC continues to defend this litigation subject to, and without waiver of, its assertion that the Court lacks personal jurisdiction over it.  And HSBC continues to hold OSIC to its burden of proving personal jurisdiction through the trial.  *Mullins v. Test America, Inc.*, 564 F.3d 386, 399 (5th Cir. 2009) (holding that an "adverse jurisdictional ruling at the pre-trial stage did not foreclose [the] defendant from holding [plaintiff] to its ultimate burden at trial of establishing contested jurisdictional facts by a preponderance of the evidence.")

**HSBC's lack of Texas contacts similarly bars the application of Plaintiffs' TSA claim.**

The Court's lack of personal jurisdiction over HSBC manifests as well in OSIC's attempt to impose liability on HSBC under the Texas Securities Act ("TSA").  Simply put, the extraterritorial application of the TSA to HSBC's banking activities in England is not permitted under U.S. or Texas law.  Dkt. 855 (sealed); Dkt. 1150 (denying HSBC's motion for summary judgment on this issue).

SIBL employees from Antigua opened the HSBC accounts in London and controlled the accounts from Antigua.  They opened the accounts to facilitate SIBL transactions occurring in Europe.  The CD purchasers who deposited their funds into the SIBL accounts at HSBC bought those CDs in Europe from brokers and financial advisors who sold the CDs in Europe.  And the CDs were almost entirely denominated in European currencies.  No part of SIBL's CD sales

transactions that touched the HSBC accounts occurred in Texas, and none of HSBC's banking activities relating to those transactions occurred in or were directed at Texas.

Against this factual background, the TSA claim cannot be applied to HSBC. For a law to have effect beyond borders, the legislative body enacting that law must give some indication that it intended for the law to so apply, and the legislative body must have the jurisdictional authority to regulate the foreign activity. No such intent can be found with respect to the TSA, and the Texas legislature has no jurisdictional authority to regulate the banking activities in England of an English bank. Plaintiffs' alleged claim against HSBC under the TSA must fail.

## 4. THE PARTIES' CONTENTIONS

*Concisely state in separate paragraphs the contentions that are necessary to the relief sought in the case. Only those contentions that are an essential basis for resolving the case are necessary.*

### OSIC's Contentions.

OSIC has alleged two claims against the Defendants. First, OSIC alleges that the Defendants knowingly participated in Allen Stanford and James Davis' breaches of fiduciary duty to SIBL and therefore are jointly and severally liable for increased liabilities and diversion damages caused by those breaches of fiduciary duty as well as exemplary damages. Second, OSIC alleges that the Defendants materially aided Allen Stanford and James Davis in violating the Texas Securities Act and therefore are jointly and severally liable for damages prescribed by the TSA resulting from those TSA violations.

### OSIC's Contentions Concerning Each Defendant.

#### A) TD Bank

TD Bank, a Canadian bank, served as Stanford's primary correspondent bank for almost two decades, beginning in 1991 when it established accounts for Guardian International Bank, SIBL's predecessor. The majority of all SIBL CD Proceeds from investors were deposited in

11

SIBL's account 1670 at TD Bank.  From 1996 through February 2009, over $8.8 billion was deposited into SIBL's account 1670, and TD Bank transferred $9 billion out of the account.  TD Bank also provided asset management, letters of credit, and foreign exchange services to Stanford.

TD Bank knew that the majority of inflows to account 1670 were CD Proceeds from investors and that the majority of outflows were CD interest and redemption payments to investors. TD Bank also knew that only a fraction of the CD Proceeds received were actually invested, and that account 1670 received almost no funds from investment returns.  Instead, rather than being invested, TD Bank knew that billions of dollars in CD Proceeds were transferred to Allen Stanford personally, other Stanford Entities, and other SIBL accounts.  As a result, TD Bank knew that the only way SIBL could pay back earlier investors was to use incoming CD Proceeds from new investors, which is exactly what happened and what TD Bank's records reflect.  Stanford and Davis committed the above misconduct in which TD Bank aided and participated, and such misconduct constituted breaches of fiduciary duties and violations of the TSA.

TD Bank knew that its relationship with SIBL was high risk based on SIBL and its affiliate Bank of Antigua's ("BOA") offshore status, their location in Antigua and private ownership by a sole shareholder, and the inherently high-risk nature of correspondent banking.  TD Bank also knew that there was no legitimate purpose in its Toronto office serving as the principal U.S. dollar correspondent for Stanford, and that it made no sense for a Canadian bank to play this role for Stanford over many years.  Despite this knowledge and despite TD Bank personnel repeatedly raising concerns about Stanford, TD Bank repeatedly chose not to conduct the required due diligence or file a single suspicious transaction report, with the exception of a single report filed over three years after Stanford was shut down for a single, $8,000 customer transaction.  Rather, TD Bank continued to assist Stanford and Davis in their misconduct.

**B)  HSBC**

HSBC's relationship with SIBL began in 2003 and continued through the end of SIBL's operations in February 2009.  HSBC served primarily as the point of intake for CD Proceeds from SIBL CD investors who purchased SIBL CDs denominated in British Pounds and Euros.  HSBC also accepted CD Proceeds for some SIBL CDs denominated in US Dollars and Swiss Francs.  The primary use of the SIBL accounts at HSBC was the payment of redemption and interest to SIBL CD purchasers.

HSBC knew that the substantial majority of inflows into SIBL's HSBC accounts were CD Proceeds from SIBL CD purchasers.  Contrary to SIBL's representations to HSBC and to SIBL investors that the CD Proceeds deposited to SIBL's accounts at HSBC would primarily go to investment companies or money managers for investment, HSBC knew that the CD Proceeds in these accounts primarily went to SIBL CD purchasers to make redemption and interest payments for earlier CD purchases, and that only a small percentage of outflows actually went to anything resembling an investment.  Contrary to the representations to HSBC and the investing public, HSBC knew that CD redemptions and interest payments were not funded by investment returns but were instead funded by CD Proceeds from other SIBL investor deposits.  Stanford and Davis committed the above misconduct in which HSBC aided and participated, and such misconduct constituted breaches of fiduciary duties and violations of the TSA.

HSBC was aware of SIBL's misuse of investor funds through its monitoring of the SIBL accounts attendant to its know-your-customer ("KYC") activity.  HSBC was also aware of facts that made clear that the SIBL relationship was a high-risk relationship.  HSBC nevertheless misclassified the risk associated with the SIBL accounts and was able to do so by omitting relevant information from the KYC forms, failing to account for the negative publicity concerning Allen Stanford, and altering the information on its KYC forms concerning the objective of the SIBL

accounts.  In the face of the above knowledge and obvious signs of fraud, HSBC continued to provide services to SIBL, including by taking in deposits from SIBL investors, from which HSBC was able to generate substantial profits.

### C)  Bank of Houston

Bank of Houston began providing depository services for SIBL and other Stanford Entities starting in June 2007.  Although accounts at Bank of Houston were not opened until 2007, Stanford had existing relationships spanning over the previous decade with Bank of Houston executives and personnel who were previously employed by Trustmark.  The Stanford relationship manager at Bank of Houston was Dennis Watson, who was also a senior vice president of Bank of Houston and the CEO of the River Oaks branch of Bank of Houston.

Bank of Houston knew that inflows into Bank of Houston SIBL accounts from the Stanford Entities, amounting to tens of millions of dollars per month and hundreds of millions of dollars over the entire relationship, consisted primarily of CD Proceeds transferred from SIBL's accounts maintained at other banks, including SIBL's TD Bank 1670 account.  Bank of Houston further knew that SIBL's accounts at Bank of Houston acted as conduits to disseminate SIBL CD Proceeds to other Stanford Entities, including Stanford Financial Group Company ("SFGC") and Stanford Financial Group Global Management ("SFGGM").  Bank of Houston also knew that the SFGC and SFGGM accounts, both of which were maintained at Bank of Houston, were used to send SIBL CD Proceeds to yet other non-SIBL Stanford Entities.  Dennis Watson testified that he did not know the purpose of the transfers to other Stanford Entities.  Nonetheless, the evidence reflects that Bank of Houston knew that the SIBL CD Proceeds were used to fund capital contributions to the non-SIBL Stanford Entities as well as pay their operating expenses.  Bank of Houston further knew that the exchanges of funds between Stanford Entities were numerous and significant and

had the potential to conceal questionable payments or receipts.  Bank of Houston also knew that Stanford accounts at Bank of Houston were used to send CD Proceeds back to SIBL accounts.

In light of the above activity, Bank of Houston knew that SIBL invested very little of the SIBL CD Proceeds it took in from investors and that the returns generated from any such investments could not possibly be sufficient to pay the required CD redemption and interest payments to SIBL CD investors.  Indeed, Dennis Watson testified that he never saw any sign of investment income being received by SIBL.

Stanford and Davis committed the above misconduct in which Bank of Houston aided and participated, and such misconduct constituted breaches of fiduciary duties and violations of the TSA.

**Summary of OSIC's Claims.**  OSIC alleges claims against the Defendants as follows:

**Participation in Breach of Fiduciary Duty.**  Stanford and Davis breached their fiduciary duties by lying to investors about how SIBL would use the funds they deposited into SIBL accounts.  Contrary to SIBL's representations, a small fraction of deposited funds were used for investments.  Instead, deposited funds were primarily used to pay redemption and interest to other SIBL CD investors and to prop up Stanford's fraudulent business empire.  Stanford and Davis also breached their fiduciary duties to SIBL by causing the misappropriation of SIBL's funds and by causing SIBL to violate federal and state securities laws.  The Defendants knowingly participated in Stanford's and Davis's breaches of their fiduciary duties to SIBL.  The Defendants were aware that Stanford and Davis owed fiduciary duties to SIBL and were aware that Stanford and Davis were breaching those duties in the manner described above.  Because they knowingly participated in Stanford's and James Davis' breaches of fiduciary duty to SIBL, Defendants are jointly and

severally liable for increased liabilities and diversion damages caused by those breaches of fiduciary duty as well as exemplary damages.

**Aiding and Abetting Violations of the TSA.** The CDs offered by the Stanford Entities were securities under the TSA, and Stanford and Davis sold these securities to residents of Texas and others through the use of untrue representations and materially misleading omissions. The Defendants were aware of these misrepresentations and omissions or at the very least acted with reckless disregard for the truth or the law. The Defendants substantially assisted in these violations by executing transactions inconsistent with Stanford's and Davis's representations and thus aided and abetted the violations of the TSA. Because the Defendants materially aided Stanford and Davis in violating the TSA, they are jointly and severally liable for damages prescribed by the TSA resulting from those TSA violations.

<u>**Defendants' Contentions**</u>.

**A) Bank of Houston and TD Bank's Contentions.**

**OSIC's Claim for Knowing Participation in Breach of Fiduciary Duty Against All Defendants.**

In order for OSIC to prevail on its Knowing Participation claim, OSIC must prove:

- The existence of a fiduciary duty between Mr. Stanford and Mr. Davis on the one hand and SIBL on the other;

- That Defendants knew of that fiduciary duty; and

- That Defendants knew that they were participating in Mr. Stanford's and Mr. Davis's breach of their fiduciary duty to SIBL.[2]

---

[2]    *See Rotstain v. Trustmark Nat'l Bank*, 2022 U.S. Dist. LEXIS 10332, at *42 (N.D. Tex. Jan. 20, 2022).

Specifically, OSIC claims that Mr. Stanford, Mr. Davis, and others breached their fiduciary duties to SIBL by misappropriating and converting funds from SIBL accounts maintained by Defendants.  OSIC further contends that the Defendant Banks knew of these misappropriations and knew that they constituted breaches of fiduciary duty.  Finally, OSIC contends that the Defendant Banks facilitated the theft of funds, thereby facilitating and substantially assisting the breaches of fiduciary duty.

Defendants contend that the Knowing Participation claim must fail because OSIC cannot prove that, in providing correspondent banking services to SIBL, Defendants knew that they were participating in a breach of Mr. Stanford and Mr. Davis' fiduciary duties to SIBL.  That is, OSIC cannot show that Defendants had "actual knowledge" of Mr. Stanford and Mr. Davis' scheme.[3] Because OSIC cannot show that Defendants had actual knowledge in fact, OSIC relies on circumstantial evidence – what OSIC refers to as "red flags" – and argues that the Defendants should be held to the standard of a forensic investigator or auditor to discover the fraud.  That is not a correspondent bank's role.

Defendants contend that their role was to "know your customer" and see that the customer's (in this case SIBL's) banking activities were consistent with the customer's business profile.  The Defendant Banks performed this role well.  They each learned about SIBL through appropriate "know your client" reviews, monitored accounts for consistent transactions, and surveilled the accounts for improper activity such as money laundering.  The Defendant Banks determined that SIBL's activity fit the profile of a bank selling CDs and, furthermore, that SIBL was not engaged in money laundering activity.  The Defendant Banks did not see evidence of a fraud or Ponzi scheme.  Mr. Stanford and Mr. Davis kept the Defendant Banks in the dark about

---

[3]      *Id.* at *43 (indicating a showing of actual knowledge is required).

numerous indicia of misconduct, including numerous pre-2009 SEC investigations and Stanford's bribery of its outside auditor and regulator in Antigua.  The Defendant Banks were deceived by Stanford's façade for years, just like everyone else.  As a result, the Defendant Banks could not have knowingly participated in Mr. Stanford and Mr. Davis' fiduciary breaches and cannot be held liable for OSIC's Knowing Participation claim.

**OSIC's Claim for Aiding and Abetting Violations of the TSA Against All Defendants.**

To prevail on their claim for aiding and abetting violations of the TSA, OSIC must show that:

- There was a primary violation of the TSA by Mr. Stanford, Mr. Davis, or SIBL by: (i) selling SIBL CDs by means of an untrue statement of material fact or an omission of a material fact; (ii) the CD purchasers were induced to purchase the CDs from Mr. Stanford, Mr. Davis or SIBL as a result of the untrue statement or omission of material fact; and (iii) the SIBL CD purchasers suffered an injury; and

- Defendants, with an intent to deceive or defraud or with reckless disregard for the truth or the law, substantially assisted Mr. Stanford, Mr. Davis or SIBL in committing the TSA violation in connection with the untrue statements or omissions of material fact that led to the sale of the SIBL CDs.[4]

More simply, the definition of aiding and abetting is that one party has committed a harm and a third party, with knowledge of that harm, substantially assisted such parties wrongful

---

[4]      *Id.* at *13.

conduct.[5]   A party acts with reckless disregard when it is subjectively aware of the primary wrongdoer's improper activity.[6]

OSIC contends that Defendants are liable under the TSA because Mr. Stanford and Mr. Davis are "sellers" (as that term is defined for purposes of the TSA) and their actions can be imputed to SIBL.   OSIC further contends that despite being aware of red flags relating to SIBL and its operations, Defendants acted with reckless disregard for the existence of Stanford's scheme, which OSIC alleges can be proven through circumstantial evidence, such as the length of time each Defendant had a relationship with SIBL, each Defendant's insight into SIBL's flow of funds, and the alleged importance of the SIBL relationship to each Defendant.   Finally, OSIC contends that Defendants provided banking services that sustained the Stanford Ponzi scheme until its collapse in February 2009.

Defendants contend that OSIC cannot prove its TSA claim because, *inter alia*, OSIC cannot show that Defendants acted with the requisite state of mind.   There is no evidence that any Defendant intended to deceive or exercised reckless disregard for the truth in connection with any statement made by Mr. Stanford, Mr. Davis or SIBL to any SIBL CD purchaser.   Defendants did not participate in the sale or marketing of SIBL CDs to purchasers.   As for their interactions with SIBL, Defendants asked thorough questions and conducted appropriate due diligence but never discovered or suspected Stanford's fraud or other unlawful activity.   In fact, the Defendant Banks had less insight into the Stanford Entities' operations  than government regulators or other private service providers; nor were Defendants aware that those actors suspected fraudulent or unlawful

---

[5]     *Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 96 (5th Cir. 1975).
[6]     *Sterling Trust Co. v. Adderley*, 168 S.W.3d 835, 843 (Tex. 2005).

conduct by Allen Stanford or the Stanford Entities prior to the SEC acting in February 2009 to place them into receivership.

Defendants also contend that OSIC cannot show that Defendants provided substantial assistance to the carrying out of a primary TSA violation by Mr. Stanford, Mr. Davis, or SIBL. To prove substantial assistance, OSIC must show that the banking services Defendants provided to SIBL were something more than routine banking.[7] Here, however, Defendants provided ordinary course correspondent banking services and other similar services to SIBL. The record does not support Plaintiffs' contentions, and their TSA claim thus fails.

### B) HSBC's Contentions

HSBC denies that it knowingly participated in any breaches of fiduciary duty, or materially aided any TSA violations by, Stanford and/or Davis. Stanford and Davis had no involvement with the HSBC accounts. They didn't steal any money from the HSBC accounts and they did not use the HSBC accounts to commit any TSA violations.

The HSBC accounts were opened by SIBL's president in Antigua, Juan Tolentino, in 2003 to support SIBL's expansion into Europe. Unlike all other accounts of SIBL and the Stanford Entities—which were opened and controlled by the SFG treasury group in Houston, the HSBC accounts were opened and controlled by Tolentino in Antigua. Tolentino was not a Stanford fraudster, and the HSBC accounts had nothing to do with the Stanford and Davis fraud that was going on in the Americas. HSBC was completely unaware of that fraud.

The vast majority of transactions that OSIC accuses HSBC of aiding had no connection to the HSBC accounts at all. HSBC did not participate in or materially aid these transactions, let alone do so knowingly or with an awareness that it was participating in illegal activity. For

---

[7]     *Rotstain*, 2022 U.S. Dist. LEXIS 10332, at 34.

example, OSIC has only identified one transaction that allegedly involved a diversion of funds from HSBC accounts, yet OSIC is improperly suing HSBC for billions of dollars of alleged diversions from accounts at other banks that HSBC did not participate in at all.

To prove its knowing participation and TSA claims, OSIC must prove that a specific individual at HSBC acted with the requisite knowledge and intent—a theory of "collective knowledge" not possessed by a single individual is insufficient.[8] OSIC has not identified, and cannot prove, that any HSBC employee had such knowledge or intent.

For OSIC's knowing participation and TSA claims, OSIC must also prove that HSBC had "substantial" participation in the transactions in question.  However, to the extent HSBC had any involvement in any transactions, it was merely providing routine banking services that do not rise to the level of substantial participation or assistance.

HSBC also assert that the question of TSA liability and applicability must be answered on a purchaser-by-purchaser basis.  As the MDL court noted in denying the named plaintiffs' motion for class certification, there are important individualized fact issues associated with each purchaser's TSA claim that cannot be litigated on a collective basis.  One such example is whether the Defendant's alleged conduct materially aided the underlying TSA violation against that particular purchaser.  Purchasers were spread throughout the world, and their interaction (if any) with the Defendants was not uniform.  Whether a particular Defendant "materially aided" a violation against a particular purchaser will vary widely from purchaser to purchaser.  Likewise, another individualized issue is whether a particular purchaser's transaction has the requisite

---

[8]     *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 240-41 (5th Cir. 2010) ("[A]s a general rule, where 'an essentially subjective state of mind is an element of a cause of action' we have declined to allow this element to be met by a corporation's collective knowledge, instead requiring that the state of mind 'actually exist' in at least one individual and not be imputed on the basis of general principles of agency.").

connection with Texas to be covered by the TSA and, if so, whether the claim is barred by the TSA's two-year statute of limitations--which depends on when the purchaser knew or should have known of the purchaser's potential claim.

Another issue particular to HSBC is whether the TSA can be applied outside the United States to its banking activities in London and to the European CD sales that resulted in deposits to the SIBL accounts at HSBC. [9]  And HSBC continues to assert and preserve its defenses that OSIC's TSA claims are barred by the TSA's statute of repose, barred for lack of standing, and  that all claims are subject to the Texas proportionate responsibility/responsibility statute notwithstanding the Court's previous rulings on this issue.  HSBC also continues to assert that the purported expert evidence that OSIC relies on is unreliable and inadmissible under *Daubert* and its progeny.

## 5.  <u>EXHIBITS</u>

*On a form similar to the one provided by the Clerk, each party will attach two lists of all exhibits expected to be offered and make the exhibits available for examination by opposing counsel.  All documentary exhibits must be exchanged before trial, except for rebuttal exhibits.*

The Parties have attached a list of exhibits expected to be offered at trial to which no party has objected.  *See* **Appendix A** (Proposed Pre-Admitted Exhibit List).

The Parties have attached their lists of all remaining exhibits expected to be offered at trial.

*See* **Appendix B** (OSIC's Exhibit List); **Appendix C** (Defendants' Joint Exhibit List); **Appendix D** (TD Bank's Exhibit List); **Appendix E** (HSBC's Exhibit List); **Appendix F** (Bank of Houston's Exhibit List).

---

[9]      ECF 1050 (MSJ Order) at 34 (recognizing that "a fact issue exists as to the possible connection between HSBC['s] … services to the Stanford entities and conduct that unambiguously falls within the TSA's reach, even if the statute cannot be given extraterritorial application.").

Plaintiffs have also attached their list of objections to the remaining exhibits on Defendants' exhibit lists, which must be resolved by the Court either before or during trial before those exhibits can be offered into evidence.  *See* **Appendix G.**

### 6.  <u>WITNESSES</u>

*List the names and addresses of all witnesses who may be called, separately identifying those witnesses whom the party expects to present and those whom the party may call if the need arises. Include a brief statement of the nature of their testimony.  If a witness is to appear by deposition, cite the inclusive pages and lines to be read.  With regard to expert witnesses, a brief statement of the nature of their testimony and their qualifications is required.*

The Parties have attached their witness lists, which identify each witness that the parties expect to or may offer at trial, or may call if the need arises, and their address, along with a brief statement of the nature of their testimony, and, with respect to experts, a brief statement of the expert's qualifications.  Additionally, for the witnesses expected to testify via video deposition, the witness lists include the designated page and line numbers of that testimony.  *See* **Appendix H** (OSIC's Witness List); **Appendix I** (TD Bank's Witness List); **Appendix J** (HSBC's Witness List); **Appendix K** (Bank of Houston's Witness List).

### 7.  <u>ADDITIONAL REQUIRED ATTACHMENTS</u>

The Parties have attached proposed questions for juror questionnaires. *See* **Appendix L** (OSIC's Proposed Juror Questionnaire); **Appendix M** (TD Bank's Proposed Juror Questionnaire); **Appendix N** (HSBC's Proposed Juror Questionnaire); **Appendix O** (Bank of Houston's Proposed Juror Questionnaire).

The Parties have attached proposed questions for the voir dire examination.  *See* **Appendix P** (OSIC's Proposed Voir Dire Questions); **Appendix Q** (Defendants' Proposed Voir Dire Questions).

The Parties have also attached their proposed jury charges. *See* **Appendix R** (OSIC's Proposed Jury Charge); **Appendix S** (TD Bank and Bank of Houston's Proposed Jury Charge); **Appendix T** (HSBC's Proposed Jury Charge).

## 8. TRIAL

*State probable length of trial and logistical problems, including availability of witnesses, out-of-state people, bulky exhibits, and demonstrations.*

**Pending Motions.**

The following motions remain pending:

- OSIC's Motion to Exclude Expert Opinion Testimony of William B. Waldie and Lawrence M. Iwanski (ECF No. 907);

- OSIC's Motion to Exclude Expert Opinion Testimony of Stephen Scott (ECF No. 913); and

- HSBC and Independent Bank's Motion for Leave to Designate Responsible Third Parties & Supporting Brief (Dkt. 503).

## OSIC's Contention Regarding Trial.

OSIC believes 4 weeks, or 80 hours, will be sufficient for both Plaintiffs and Defendants to present their cases.

OSIC anticipates the following logistical problems that may affect trial:

i.     Some exhibits are in the form of Excel spreadsheets, which may be best viewed by the jury in native format.

ii.    Some HSBC witnesses are located out of the country and are beyond HSBC's control.  HSBC believes that some of these witnesses are willing to appear live at trial but that they are unwilling to do so during OSIC's case.  OSIC intends to call those witnesses, and it will do so by video deposition if the witnesses are

unavailable at the time they are called.  HSBC intends to call such witnesses live in Defendants' case-in-chief.  OSIC's position is that such witnesses should only be called once, and if they are unavailable during OSIC's case-in-chief, then they should not be called live during Defendants' case-in-chief.

iii.   HSBC wishes to call one of its former employees, Caroline Roberts, to appear remotely by video because of her unavailability to travel to the United States from the United Kingdom during trial.  Ms. Roberts was deposed, and at her deposition, she was questioned by counsel for both OSIC and HSBC.  It is OSIC's position that Ms. Roberts should not be permitted to appear remotely by video, and that, to the extent her testimony is necessary to HSBC's defense, HSBC can play appropriate excerpts from Ms. Roberts' video deposition.

**Defendants' Contention Regarding Trial.**

Defendants believe 35 full trial days or 210 hours will be sufficient for both Plaintiffs and Defendants to present their cases.

HSBC anticipates the following logistical problems that may affect trial:

**Testimony of HSBC Witnesses Generally.**

As disclosed in its witness list served on the parties on January 13, 2023, HSBC intends to call four former HSBC employees live at trial: (1) Ian Brooks; (2) Bradley Johnson; (3) Caroline Roberts; and (4) Mark Stadler.  However, because each of these witness is retired, and because each lives outside of the United States (Mr. Johnson in South Africa, and the others in England), issues of availability, logistics, and lack of control may prevent their attendance at the trial.  Thus, HSBC has designated certain deposition testimony from them out of an abundance of caution.

OSIC intends to call these HSBC witnesses by video deposition if the witnesses are unavailable at the time they are called. OSIC's position is that such witnesses should only be called once, and if they are unavailable during OSIC's case-in-chief, then they should not be called live during Defendants' case-in-chief.

In addition, because three of the defendants have now reached settlements with Plaintiffs, the other witnesses addressed here might be required to appear earlier than anticipated. This factor, coupled with the uncertainties of international travel, has given rise to issues with these witnesses' respective availability for trial. Mr. Stadler, in particular, has encountered travel visa issues in connection with travel from England to Houston. If and to the extent that any of these witnesses are unable to appear live, HSBC intends to use their respective deposition testimonies at trial as previously designated.

**Testimony of HSBC Witness Caroline Roberts.**

Ms. Roberts has authorized disclosure to the Court that she has been scheduled for surgery on her left eye on February 22, 2023. She is unable to fly during the three months following the surgery (or until cleared by her surgeon). As a result, Ms. Roberts now is unavailable to appear at trial. However, she asked about the possibility of providing testimony remotely. Thus, HSBC may need to request that the Court permit Ms. Roberts to provide live testimony remotely by video conferencing platform. Otherwise, HSBC plans to use Ms. Roberts's deposition testimony in this case. It is OSIC's position that Ms. Roberts should not be permitted to appear remotely by video, and that, to the extent her testimony is necessary to HSBC's defense, HSBC can play appropriate excerpts from Ms. Roberts' video deposition.

Date: _____

_____
The Hon. Kenneth M. Hoyt
United States District Judge

APPROVED:

Dated:  February 17, 2023                    Respectfully submitted,

By: */s/ James R. Swanson*                   By: */s/ Kevin M. Sadler*
    James R. Swanson (*pro hac vice*)             Kevin M. Sadler
    *Attorney-in-charge*                           *Attorney-in-charge*
    Lance C. McCardle (*pro hac vice*)             Texas Bar No. 17512450
    *Of counsel*                                   BAKER BOTTS L.L.P.
    Benjamin D. Reichard                           1001 Page Mill Road
    *Of counsel*                                   Building One, Suite 200
    Texas Bar No. 24098693                         Palo Alto, California 94304-1007
    FISHMAN HAYGOOD, L.L.P.                         T: (650) 739-7500
    201 St. Charles Avenue, 46th Floor              F: (650) 739-7699
    New Orleans, Louisiana 70170-4600              kevin.sadler@bakerbotts.com
    T: (504) 586-5252
    F: (504) 586-5250                              Scott D. Powers
    jswanson@fishmanhaygood.com                    *Of counsel*
    lmccardle@fishmanhaygood.com                   Texas Bar No. 24027746
    breichard@fishmanhaygood.com                   David T. Arlington
                                                   *Of counsel*
    Peter D. Morgenstern (*pro hac vice*)          Texas Bar No. 00790238
    *Of counsel*                                   BAKER BOTTS L.L.P.
    Joshua E. Abraham (*pro hac vice*)             401 South 1st Street, Suite 1300
    *Of counsel*                                   Austin, Texas 78704-1296
    BUTZEL LONG, P.C.                              T: (512) 322-2500
    477 Madison Avenue, Suite 1230                 F: (512) 322-2501
    New York, New York 10022                       scott.powers@bakerbotts.com
    T: (212) 818-1110                              david.arlington@bakerbotts.com
    F: (212) 818-0123
    morgenstern@butzel.com                         *Attorneys for the Official Stanford Investors*
    abraham@butzel.com                             *Committee*

    Edward C. Snyder
    Texas Bar No. 00791699
    EDWARD C. SNYDER ATTORNEY AT
      LAW PLLC
    700 N. St. Mary's, Suite 1560
    San Antonio, Texas 78205

T: (210) 630-4200
F: (210) 630-4210
esnyder@casnlaw.com

Jesse R. Castillo
Texas Bar No. 03986600
LAW OFFICES OF JESSE R. CASTILLO PLLC
700 N. St. Mary's, Suite 1560
San Antonio, Texas 78205
T: (210) 630-4200
F: (210) 630-4210
jcastillo@jcastlaw.com

Scott M. Berman (*pro hac vice*)
*Of counsel*
Philippe Adler (*pro hac vice*)
*Of counsel*
David J. Ranzenhofer (*pro hac vice*)
*Of counsel*
Geoffrey Cajigas (*pro hac vice*)
*Of counsel*
FRIEDMAN KAPLAN SEILER ADELMAN &
    ROBBINS LLP
7 Times Square, 28th Floor
New York, New York 10036
T: (212) 833-1100
F: (212) 373-7920
sberman@fklaw.com
padler@fklaw.com
dranzenhofer@fklaw.com
gcajigas@fklaw.com

*Attorneys for the Official Stanford Investors*
*Committee and Named Plaintiffs*


By: */s/ (by permission)*                              By: */s/ (by permission)*

    Rodney Acker                                      Charles L. Babcock
    State Bar No. 00830700                       *Attorney-in-charge*
    Southern District Bar No. 13408           Texas Bar No. 01479500
    Ellen Sessions                                    JACKSON WALKER LLP
    State Bar No. 00796282                       1401 McKinney St., Suite 1900
    Southern District Bar No. 21531           Houston, Texas 77010
    NORTON ROSE FULBRIGHT US LLP        T: (713) 752-4210
    2200 Ross Avenue, Suite 3600              F: (713) 308-4110

Dallas, Texas 75201-7932
T: (214) 855-8000
F: (214) 855-8200
rodney.acker@nortonrosefulbright.com
ellen.sessions@nortonrosefulbright.com

Gary Y. Gould
State Bar No. 24104995
Southern District Bar No. 3325232
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
T: (713) 651-3529
gary.gould@nortonrosefulbright.com

Lynn K. Neuner (*pro hac vice*)
*Attorney-in-charge*
Peter E. Kazanoff (*pro hac vice*)
Linton Mann III (*pro hac vice*)
Alicia N. Washington (*pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
T: (212) 455-2000
F: (212) 455-2502
lneuner@stblaw.com
pkazanoff@stblaw.com
lmann@stblaw.com
alicia.washington@stblaw.com

*Attorneys for Defendant*
*The Toronto-Dominion Bank*

cbabcock@jw.com

Wallace B. Jefferson
ALEXANDER DUBOSE & JEFFERSON LLP
515 Congress Ave., Suite 2350
Austin, Texas 78701
T: (512) 482-9300
F: (512) 482-9303
wjefferson@adjtlaw.com
Robert B. Dubose
ALEXANDER DUBOSE & JEFFERSON LLP
1844 Harvard Street
Houston, Texas 77008-4342
T: (713) 523-2358
F: (713) 522-4553
rdubose@adjtlaw.com

Paul C. Watler
Texas Bar No. 20931600
Jonathan D. Neerman
Texas Bar No. 24037165
Edwin M. Buffmire
Texas Bar No. 24078283
Lindsey Marsh Brown
Texas Bar No. 24087977
Minoo Blaesche
Texas Bar No. 24075102
Cody A. Martinez
Texas Bar No. 24102146
JACKSON WALKER LLP
2323 Ross Ave., Suite 600
Dallas, Texas 75201
T: (214) 953-6000
F: (214) 953-5822
pwatler@jw.com
jneerman@jw.com
ebuffmire@jw.com
lmarsh@jw.com
mblaesche@jw.com
cmartinez@jw.com

*Attorneys for Defendant*
*Independent Bank, formerly known as*
*Bank of Houston*

By: */s/ (by permission)*
    John K Schwartz
    *Attorney-in-charge*
    Texas Bar No. 17865325
    Kent Hofmann
    Texas Bar No. 24032424
    LOCKE LORD LLP
    600 Congress Ave., Suite 2200
    Austin, Texas 78701
    T: (512) 305-4806
    F: (512) 305-4800
    jschwartz@lockelord.com
    khofmann@lockelord.com

    Roger B. Cowie
    Texas Bar No. 00783886
    Katherine S. Wright
    Texas Bar No. 24095732
    LOCKE LORD LLP
    2200 Ross Ave., Suite 2800
    Dallas, Texas 75201
    T: (214) 740-8000
    F: (214) 740-8800
    rcowie@lockelord.com
    kswright@lockelord.com

*Attorneys for Defendant*
*HSBC Bank plc*